JOSEPH HAAG, Plaintiff, *v.* CITY OF NEW YORK, Defendant.*

Supreme Court, New York County, November 22, 1926.

Municipal corporations — employees' retirement — city of New York — Greater New York Charter, § 1710, providing that employees in city service attaining age of seventy years shall be retired, except board of estimate and apportionment continues employee in service, means employees are excluded from service after attaining seventy years unless continued in service — defense, in action for salary of employee retired at age of seventy, sufficient — exclusion of member of retirement system is not arbitrary or unconstitutional.

Section 1710 of the Greater New York Charter, providing that every member in city service who has attained the age of seventy years shall be retired

* Affd., 220 App. Div. 704.

forthwith, except that a member in city service who has or shall have attained the age of seventy years, may, upon the approval of the head of his department, request the board of estimate and apportionment to be continued in public service for a period of two years, must be interpreted as meaning that unless continued in service upon the affirmative request of the superior officer, an employee, who is a member of the retirement system, is excluded from the public service upon attaining the age of seventy years.

Accordingly, in this action to recover salary alleged to have accrued after November 1, 1923, in plaintiff's favor as " assistant to the mayor " of the city of New York, to which plaintiff was appointed on that date, a defense that on October 28, 1923, plaintiff had attained the age of seventy years and that, in pursuance of section 1710 of the Greater New York Charter the board of estimate and apportionment duly retired him from city service to take effect November first, and that no action was taken by such board to continue plaintiff in service as provided for by said charter provision, is sufficient in law and should not be stricken out.

The exclusion of members of the retirement system of the city of New York from public service at the age of seventy, does not constitute an arbitrary and unconstitutional discrimination, though a like limitation does not apply to all public officials, for the purpose and effect of the retirement act are to gradually substitute a comprehensive, consistent and uniform system in place of the ill-considered and spasmodic attempts that were in process of experimentation prior to the enactment of the retirement act; the discrimination complained of will be to a large extent merely temporary with the result that after a number of years all city employees of the classes generally aimed at will be members of the system.

Moreover, since plaintiff waived his right to a possible objection by voluntarily joining the fund, he cannot now successfully attack the constitutionality of the act.

MOTION, under rule 109 of the Rules of Civil Practice, to strike out certain defenses as insufficient in law.

*Battle, Vandiver, Levy & Van Tine [Isaac H. Levy* of counsel], for the plaintiff.

*George P. Nicholson,* Corporation Counsel [*William E. C. Mayer* of counsel], for the defendant.

BIJUR, J. This is a motion on complaint and answer under rule 109 to strike out certain defenses as insufficient in law. The action is brought to recover salary alleged to have accrued after November 1, 1923, in favor of plaintiff as occupying the office of " assistant to the mayor," to which he was reappointed on that date. The real defense is that, on October 28, 1923, the plaintiff had attained the age of seventy, and that in pursuance of statute the board of estimate duly retired him from city service, to take effect on November first, and that no action was taken by the board of estimate to continue the plaintiff in service as provided by section 1710, subdivision 1, of the Greater New York Charter (Laws of 1901, chap. 466, as amd. by Laws · of 1923, chap. 69), which now reads as follows:

" Sec. 1710. Retirement of a member for service shall be made by the board of estimate and apportionment as follows: (1) Each member in city-service who has attained the age of seventy and each member in city-service who attains the age of seventy shall be retired forthwith or on the first day of the calendar month next succeeding that in which the said member shall have attained the age of seventy years; except that a member in city-service who has or shall have attained the age of seventy years may, upon the approval of the appropriate head of department, request the board of estimate and apportionment to be continued in the public service for a period of two years and such board may, where advantageous to the public service, grant such request for such period, not exceeding two years, as such board may determine; and at the termination of such additional period of service, such board may in like manner permit such employee to continue in the public service for successive two-year periods or any portion thereof; but in no case shall public service be continued after a member shall have attained the age of eighty years.   *   *   * "

The actual controversy involves the construction and application of sections 1700 to 1724 of the city charter, which were added thereto originally by Laws of 1920, chapter 427, entitled: " An act to amend the Greater New York Charter, by providing for a retirement system for officers and employees whose compensation in whole or in part is payable out of the treasury of the city of New York."

Plaintiff's counsel's construction of the general purposes of this act is as follows: " It also appears that the whole act was designed to establish a pension or relief fund; that the very words ' retirement system ' are defined to mean certain funds; that ' membership ' means the right to share in the benefits of these funds; that ' retirement ' means, not termination of employment by the city, but the *right* to receive a pension or an allowance. ' Retirement ' does not mean termination of rights, but the initiation of rights. It does not mean that a member ceases to be a member, but that his rights as a member become fixed and established. It means that he has accomplished the entire purpose of his membership in the retirement system. The occasions when membership in the retirement system shall ' cease ' (1709) are clearly distinguished from the occasions when a member may or shall be ' retired ' (1710). Retirement is a right and an advantage, not a disability."

The city, on the other hand, urges that the effect of the act is to make ineligible for city service any member of the retirement system who has attained the age of seventy, unless he be continued as provided in section 1710, which proviso may be dismissed from

consideration because the course therein prescribed was not observed in this case. The detailed provisions of the act need not be here considered, but an appreciation of certain salient features is necessary. It provides for pensions (or substitute options) for members of the system according to length of service and salary received. Membership is made obligatory on all persons who enter the city service after October 1, 1920, in positions in the competitive or labor classes of the civil service. As to all others entry is optional. The reasons for this distinction are not material to the present discussion.

Plaintiff was concededly in the optional class and elected to join. Section 1710, in addition to establishing the maximum age limit for retirement, provides that a member may retire voluntarily at ages ranging from fifty-eight to sixty according to his membership in one of three groups, plaintiff. being in the third. Plaintiff's initial contention before me is that the word " retirement " is not an apt term to describe legal incapacity to hold office, and it is urged in this connection that, were the latter intended the purpose might readily have been expressed in some phraseology akin to that contained in article 6, section 19, of the State Constitution: " No person shall hold the office of judge or justice of any court    *    *    * longer than until and including the last day of December next after he shall be seventy years of age."

The argument is not intended to be conclusive, but merely persuasive. It loses its force, however, when it is recalled that the legislation wholly excluded from its compulsory effect all employees in the service at the time of its passage and all other employees not in the competitive or labor classes. Any all-inclusive statement of incapacity to hold office after a certain age would, therefore, have been out of place — in fact, impossible.

The question then recurs: What is meant by the word " retirement? " It seems to me that the context well-nigh construes the language: Each member in city service who has attained the age of seventy " shall be retired." He may, however, " be continued in the public service," and finally " in no case shall public service be continued after    *    *    *    the age of eighty years." Although in the definitions constituting the first section of the act " city-service " is specifically defined, there is no definition of public service, which is, therefore, presumably used in its natural and ordinary sense. Yet the two phrases are interchangeably employed in the section under consideration. In the next place, plaintiff entertains an erroneous assumption of the function of the board of estimate when he says that it retired plaintiff " and awarded him an annual retirement allowance," etc. It is evident from the act that the

board of estimate has nothing at all to do with either awarding a retirement allowance or fixing its amount. The intervention of the board is purely formal to record the fact of plaintiff's retirement. His right to benefits results automatically.

I find my general interpretation of the purpose and meaning of the act confirmed by two outstanding considerations:

*First,* in the corresponding law applicable to State employees (Laws of 1920, chap. 741, now part of the Civil Service Law), passed contemporaneously with the one under consideration, there is a provision almost identical with section 1710 in the feature under consideration. In 1921 (Laws of 1921, chap. 207, § 1) the Legislature amended the State statute by adding: " This provision shall not apply to judges or justices of any court, or to elective officers holding their offices either by election or appointment to fill vacancies, or to official referees."

This exception has been continued with slight occasional amendment. To my mind it indicates the understanding of the Legislature that the words " shall be retired " mean discontinuance in and incapacity to hold appointive office. There is no other condition from which the officials named could conceivably be excepted. Failure to enact a like exception in the New York city charter in respect of city officials may have been due to accident or design. It detracts in no respect, however, from the indication by the Legislature of its understanding of the same language employed by it in a wholly similar context.

*Second,* the contemporaneous literature which accompanied the passage of these laws points out their dual function, namely: (a) To provide for the support of faithful public officials after they attain the traditional age of " threescore and ten " (or their intermediate accidental incapacity); and (b) by rendering removal automatic, to relieve the appointing power from the dilemma either of removing the ordinarily superannuated employee, thus leaving him without means of support, or of allowing him to continue in the service out of humanitarian motives to the manifest detriment of the service.

Plaintiff is impressed only with the first of these purposes. That the advocates and framers of the statute had both in mind, however, is clear from official publications of the time. In the March 30, 1920, report to the Legislature of the State Commission on Pensions (appointed pursuant to Laws of 1918, chap. 414, as amd. by Laws of 1919, chap. 22, and Laws of 1920, chap. 4) at page 14 occurs the significant sentence: " Certain funds offered employees inducement to retire in the prime of life whereas other funds did not provide *to the service* adequate relief from superannuation."

And at pages 58, 59 it said: " The commission believes that to attain the highest level of efficiency, the governmental service of the State requires a system for the retirement of superannuated and disabled employees. Without a retirement system, the tendency is for department heads to retain on the payroll superannuated and disabled employees, rather than to dismiss them after long and faithful service; the avenues of promotion become blocked and the younger and more efficient employees are tempted to leave the service for positions where individual initiative and energy receive more tangible recognition."

The city commission on pensions in its report, part I, published in 1916, says: " Delayed retirements cause loss to city's service.— Retirement from service on a pension income well below an employee's active compensation is an inducement to retire only to those who expect to supplement pension payments by their own efforts after retirement. On the other hand, with advanced age and consequent reduced opportunities for outside means of support, the prospect of a half-pay pension, requiring considerable curtailing of an employee's budget, becomes less and less alluring. Those, therefore, who do not retire in the prime of life develop a strong reluctance to give up their employment as they grow older, especially if there is a family dependent on their support. The resulting superannuation problem and consequent serious loss to the city through the stagnation of its service can only be avoided when the retirement of employees of advanced age is made mandatory by law."

And in its further report of 1918: " The service benefit, or rather the superannuation benefit, should be ranked as the most important benefit of any retirement system recommended. In the suggested plan, because of the separate treatment of disabled employees, this benefit is intended to relieve the service of only those employees who are in average good health but whose fitness for service, because of advancing age, is declining."

Mr. Paul Studensky of the Bureau of Municipal Research of New York city, in a pamphlet called " The Pension Problem," published in 1917, has this to say on the subject: " In the absence of a retirement system, the average employee who approaches old age faces a difficult situation. The amount of money he has succeeded in setting aside during his working years frequently is insufficient to secure for him an income on which he can live with reasonable comfort. The older and weaker he grows, the closer he clings to his position, fearing that if he resigns or is dismissed he will be in actual want. Difficult, too, in the absence of a retire-

9

ment system, is the position of the administrators of the government. On the one hand, their duty to the public is to eliminate the old employee who drags behind and retards the entire work causing loss to the community. On the other hand, they see the injustice of dismissing an old employee without any provision for his maintenance and care after he has exhausted his forces in serving the government. * * * "

Other similar expressions might be cited, but I have adduced enough to illustrate the underlying motives for the legislation, which I think compel the interpretation that, unless continued in service upon affirmative request of a superior officer (as provided in section 1710 of the Greater New York charter), a member of the retirement system is excluded from the public service on arriving at the age of seventy.

Plaintiff, among other subsidiary arguments, has urged upon me the consideration that the exclusion of members of the retirement system from public service at the age of seventy, while a like limitation does not apply to all public officials, constitutes an arbitrary and, therefore, unconstitutional discrimination, citing *People ex rel. Devery* v. *Coler* (173 N. Y. 103, 118). As to this I may say:

*First,* that I doubt whether the classification may be called arbitrary, in view of the fact that both the legislation and the accompanying literature indicate that the purpose and effect of the Retirement Act are to gradually substitute a comprehensive, consistent and uniform system in place of the diversified, ill-considered and wholly unsatisfactory spasmodic attempts that were then in process of experimentation. The " discrimination " complained of, therefore, will be to a large extent merely temporary, with the result that after a number of years all city employees of the classes generally aimed at will be members of the system.

*Second,* that it is a familiar rule of constitutional law that the constitutionality of an act cannot be successfully attacked except by one having an interest therein. (*People* v. *Brooklyn, F. & C. I. R. Co.,* 89 N. Y. 75, 93; *Roberts & Schaefer Co.* v. *Emmerson,* 271 U. S. 50, 54.) Plaintiff waived his right to possible objection by voluntarily joining the fund. (*Embury* v. *Conner,* 3 N. Y. 511; *Vose* v. *Cockcroft,* 44 id. 415, 422; *Anderson* v. *Reilly,* 66 id. 189, 192.)

It is urged, also, that if the act does render a member ineligible for appointment (it being a local bill), that subject is not expressed in the title as required by article 3, section 16, of the State Constitution. In view of my interpretation of the meaning of the word " retirement," however, the objection falls of its own weight.

Finally, some reference has been made to the effect of section 1560 of the Greater New York charter, which provides that one enjoying a pension and simultaneously holding an office shall not receive the pension during the time of his enjoyment of the salary. From this it is sought to draw the implication that the Legislature contemplated, at least as to the city of New York, that a pensioner may hold office. I find no merit in the apparently suggested argument, *first*, because I doubt whether, from an act passed substantially in its present form in 1916 (chapter 201) to cover in a general way a general subject, it may properly be inferred that the Legislature in 1920 must have intended to create a situation to which the previous act might apply; *second*, if such assumption were justified, the Retirement Act affords ample opportunity for the application of section 1560 in respect of members between the ages of sixty, the age of voluntary retirement, and seventy, that of compulsory removal. Moreover, section 1560 was when passed, and now is, applicable to situations created by many prior pension acts still in force.

Motion denied. Order signed.