In the Matter of the Application of JESSIE A. SWEENEY, Petitioner, for a Peremptory Order of Mandamus against WALTER H. MISCHLER, as Commissioner of Public Works of the City of Schenectady, N. Y., Respondent.

Supreme Court, Schenectady County, May 2, 1928.

Municipal corporations — superintendent of parks — application for peremptory order of mandamus to compel reinstatement of petitioner who held permanent appointment to post of superintendent of parks of city of Schenectady, pursuant to Second Class Cities Law, § 96 — Second Class Cities Law, § 96, can be superseded by legislation by governing body of municipality — Local Law No. 1, enacted by common council of city of Schenectady, pursuant to State Constitution, art. 12, and City Home Rule Law (Laws of 1924, chap. 363), abolishing office of superintendent of parks, valid — proof does not show office was abolished in bad faith — position was not protected by Civil Service Law — mandamus denied.

Section 96 of the Second Class Cities Law, providing that " the commissioner of public works shall appoint, to hold office during his pleasure, a superintendent of parks * * *," can be superseded by legislation by the governing body of a municipality, and consequently Local Law No. 1, enacted by the common council of the city of Schenectady, pursuant to the provisions of article 12 of the State Constitution and of the City Home Rule Law (Laws of 1924, chap. 363), abolishing the office of superintendent of parks and providing that thereafter the powers and duties incident to the office shall be exercised by the commissioner of public works, was valid.

Accordingly, petitioner, who held a permanent appointment to the office of superintendent of parks of the city of Schenectady, is not entitled to a peremptory order of mandamus reinstating her to that position, where there is nothing to show that the office was abolished in bad faith and for improper purposes.

A municipal office may be abolished for economic or beneficial reasons and the intent of the municipality in effecting such abolition cannot be reviewed by the courts.

Nor does the fact that the petitioner's position was protected by the Civil Service Law preclude its abolition by proper city officials when done in good faith, since the purpose of the Civil Service Law was simply to protect officials in their positions against arbitrary and capricious acts and was never intended to affect or control the power of a city to abolish offices for reasons of economy or when unnecessary.

The fact that the board of estimate and apportionment of said city did not concur in the abolition, is without avail, since the only duty which the board had in connection with the office was to fix the salary.

PROCEEDING for a peremptory order of mandamus.

*Poersch & St. Louis* [*Mathias P. Poersch* of counsel], for the petitioner.

*Carleton H. Lewis, Corporation Counsel*, for the respondent.

HEFFERNAN, J.   In December, 1927, pursuant to the provisions of section 96 of the Second Class Cities Law the petitioner received a permanent appointment to the office of superintendent of parks of the city of Schenectady.   This office is in the competitive class of the civil service of the State.

In February, 1928, the common council, assuming to act under the authority conferred by the Home Rule Amendment to the State Constitution, enacted Local Law No. 1, having for its object the supersession of section 96 of the Second Class Cities Law, in so far as it provides for the office of superintendent of parks, coupled with a provision that thereafter the powers and duties incident to that office should be exercised and performed by the commissioner of public works.   Subsequently this proposed law was approved by the mayor.   Accordingly, and in the belief that the office was abolished, the respondent on February 20, 1928, dispensed with the petitioner's services and she has instituted this proceeding for a peremptory mandamus order directing her reinstatement and the payment of her salary meanwhile.   There are no disputed facts and in order to expedite a decision on the merits on the questions of law involved, counsel have waived any objection which might be made to the effect that the proper parties have not been cited.

The petitioner challenges the validity of the local law on various grounds, and in order to pass on these questions it is necessary to consider, to some extent, its legislative history, the Home Rule article of the Constitution and the City Home Rule Law (Laws of 1924, chap. 363, as amd.) passed under its authority.   At the general election in 1923 the electors materially altered article 12 of the State Constitution, effective January 1, 1924.   Evidently the purpose of this change was to establish a comprehensive system of home rule for the cities of the State.   Section 1 was continued, and sections 2 to 7, inclusive,

were added.  By section 3 it is ordained that " Every city shall have power to adopt and amend local laws not inconsistent with the constitution and laws of the State, relating to the powers, duties, qualifications, *number*, mode of selection and removal, terms of office and compensation of all officers and employees of the city  *  *  *."

The Legislature, by the enactment known as the City Home Rule Law (Consol. Laws, chap. 76; Laws of 1924, chap. 363), in compliance with the constitutional mandate, made provision for carrying the amendments into effect.  In doing so it has imposed certain restrictions, among others, that " No local law shall supersede any provision of an act of the legislature relating to the property, affairs or government of cities which provision in terms and in effect applies alike to all cities  *  *  *."  (§ 12, subd. 2.)

Petitioner argues that section 96 of the Second Class Cities Law, applying as it does to all cities of that class, cannot be superseded by any legislation by the governing body of the municipality, and that consequently Local Law No. 1 is void.  To sustain her position she relies on article 12, section 2, of the Constitution of 1894, in effect when the Second Class Cities Law was enacted.  According to that section cities were classified in three groups dependent upon population.  General city laws were those which related to all the cities of one or more classes.  Special city laws were those which related to a single city, or to less than all the cities of a class.  It is highly significant that the new section 2 does not embody these distinctions.  If the Legislature, in framing the constitutional amendments for submission to the people, or in the enactment of legislation thereunder, had intended to preserve the distinctions regarding cities and laws relative thereto which existed in section 2 of article 12 as it formerly read, it would undoubtedly have said so.  Instead, it prohibits the Legislature from passing any law " relating to the property, affairs or government of cities, which shall be special or local either in its terms or in its effect, but shall act in relation to the property, affairs or government of any city only by general laws which shall in terms and in effect apply alike to all cities except on message from the governor declaring that an emergency exists and the concurrent action of two-thirds of the members of each house of the Legislature."  (Const. art. 12, § 2.)

The right to adopt and amend local laws granted to the cities by the Constitution (Art. 12, § 3) is limited only by the requirements that such laws must not conflict with the Constitution or with statutes applicable alike to all cities, and that they must touch the cities in certain specified particulars.  (Art. 12, §§ 2, 3.)  A general city law may not, of course, be set aside by a law of the locality.

The fallacy of petitioner's argument, however, is apparent. Concededly, section 96 of the Second Class Cities Law does not apply to all the cities of the State, but its application is expressly limited to cities of that class. Any other view would practically nullify the constitutional design to confer a larger measure of home rule upon cities. To remove all doubt on that subject section 4 of this statute (as amd. by Laws of 1925, chap. 392) provides: "A provision of this chapter shall apply, according to its term, only to a city of the state which on the thirty-first day of December, nineteen hundred and twenty-three, was a city of the second class, *until such provision is superseded pursuant to the city home rule law or otherwise changed, repealed or superseded pursuant to law.*"

Petitioner also contends that the office which she held was not abolished in good faith. It cannot be disputed that a municipal office may be abolished for economical or beneficial reasons and the incumbent deprived of his office. The result is, in such instance, the conservation of the city's funds. The abolition of an office, being an act of legislative power, the intent of the municipality in making such abolition cannot be reviewed by the courts. No principle of law is more firmly settled than that judges may not listen to the plea that the motives assigned for enacting legislation other than measures of a ministerial or administrative character are not the real ones. They may consider only those that may be gathered from the law itself. They may not inquire into the reasons which actuated the members of the governing body of a municipality for the purpose of passing upon the validity of legislation adopted by them in the exercise of their powers. The necessity or the wisdom of legislation is to be decided by the proper municipal authorities. The question presented here is not whether the local law ought, or ought not, to have been passed, nor whether it is desirable and for the best interests of the city. These are purely political questions which must be determined by that department to which they are exclusively committed. They are solely questions of public policy with which the court has nothing to do and without expressing any opinion upon the wisdom or policy of the law under review, or the propriety of its enactment, to annul it for any of these reasons would be judicial usurpation. The validity of a local law expressly authorized by the Legislature does not depend upon the expediency or public policy of its enactment. Neither does the fact that the petitioner's position is protected by the Civil Service Law preclude its abolition by the proper city authorities when done in good faith. The purpose of that statute was simply to protect officials in their positions against arbitrary and capricious acts. This law was never intended to affect or control the power

of a city to abolish offices for reasons of economy or when unnecessary. Neither was its purpose to furnish assurance to an officer or employee that he would be retained when his services were no longer required. Certainly, the statute does not prevent his discharge at any time in good faith, without a trial and without notice, when his office or position is legally abolished. The right, however, to abolish an unnecessary position cannot be used to conceal the discharge of an employee in violation of the Civil Service Law, nor can a vacancy be created in a position in the competitive classified municipal civil service by an act that abolishes the position and then re-establishes the same position with merely a change of name.

The petitioner's office was created by act of the Legislature, not for her benefit but for the public good; and, when the public good required, the Legislature had the same power to abolish as it had, in the first instance, to create. The right of a public officer to retain his office during the term for which he was elected or appointed is not absolute. The power that fixes his term may change it. Both by constitutional amendment and by act of the Legislature plenary authority to abolish and create offices is now conferred upon the law-making body of the city. As has been pointed out heretofore, it must be assumed that petitioner's office was abolished in good faith and for proper purposes. The fact that the board of estimate and apportionment did not concur in the abolition is of no avail. The authority for the office is found in section 96 of the Second Class Cities Law which provides that " the commissioner of public works shall appoint, to hold office during his pleasure, a superintendent of parks * * *." The only duty which the board of estimate and apportionment had in connection with this office was to fix the salary as provided in section 74 of the same act (as amd. by Laws of 1919, chap. 151). By the provisions of the Second Class Cities Law, until amended or superseded, as in this case, it is mandatory that certain officers shall be elected and appointed. The superintendent of parks is one of them. As to all such offices the board of estimate and apportionment has no voice in their creation. Its authority is limited to the fixation of the salaries of the incumbents. Provision is likewise made for designating other officers with the assent and concurrence of the board of estimate and apportionment. As to those officers only, such board has the right to veto their selection or removal. For reasons stated that rule cannot be successfully invoked here.

My conclusion, therefore, is that the local law is valid, was validly enacted, and consequently the petitioner's application must be denied, but, under the circumstances, without costs.