DAVID LAZARUS, Plaintiff, v. THE CITY OF NEW YORK and Others, Defendants.

Supreme Court, New York County, June 9, 1934.

*Myers, Treanor & Keating* [*John Caldwell Myers* of counsel], for the plaintiffs, for the motion.

*Paul Windels, Corporation Counsel* [*William C. Chandler* and *Oren C. Herwitz* of counsel], for the defendants, opposed.

LEVY, J. This is a motion for a temporary injunction in an action to restrain the city of New York and the members of the board of estimate and apportionment from interfering with the plaintiff's continuance in office as commissioner of records. A similar motion is made in an action by plaintiff Philip F. Donohue, who is a member of the board of water supply. As the facts in both cases are parallel and the issues of law involved identical, both motions will be treated together in this opinion.

Each plaintiff is seventy-six years old, and both are members of the New York city employees' retirement system, by virtue of which they were subject to mandatory retirement when they reached the age of seventy, together with annuity, pension and other benefits accruing to a person retired. By an exception operating under certain conditions the board of estimate was permitted to continue their service by periodical extensions not exceeding two years, and expiring before they attained the age of eighty.

The provision of the law which covers this situation is subdivision 1 of section 1710 of the Greater New York Charter, and reads as

follows: " Each member in city-service who has attained the age of seventy and each member in city-service who attains the age of seventy shall be retired forthwith or on the first day of the calendar month next succeeding that in which the said member shall have attained the age of seventy years; except that a member in city-service who has or shall have attained the age of seventy years, may upon the approval of the appropriate head of department, request the board of estimate and apportionment to be continued in the public service for a period of two years and such board may, where advantageous to the public service, grant such request for such period, not exceeding two years, as such board may determine; and at the termination of such additional period of service, such board may in like manner permit such employee to continue in the public service for successive two-year periods or any portion thereof; but in no case shall public service be continued after a member shall have attained the age of eighty years."

On various occasions subsequent to the time when the plaintiffs reached the age of seventy, their tenure was duly extended by action of the board of estimate, pursuant to the statute quoted. The last extension was by resolution of the board of estimate and apportionment adopted on December 8, 1933, by the terms of which plaintiff Lazarus was continued in his office as commissioner of records up to December 29, 1934, and plaintiff Donohue as commissioner of the board of water supply up to July 21, 1934. It is now charged that an attempt is being made by the present board of estimate to modify the resolution of December 8, 1933, passed by the former board, so as to terminate the services of the plaintiffs forthwith, or at least prior to the times set in the resolution. There are no denials or opposing affidavits by the defendants, except that a copy of the original resolution is presented. As the language there employed may be important in the consideration of the merits of the motion, it is thus set forth: " Resolved, That the Board of Estimate and Apportionment, pursuant to the provisions of section 1710, subdivision 1, of the Greater New York Charter, does hereby approve the applications of said members of the New York City Employees' Retirement System for the period of continuance in the public service, not exceeding the statutory limitation of two years, for which said members have heretofore respectively applied and which have been approved in part by the Board, and not beyond the age of 80 years nor exceeding the periods heretofore approved by the heads of departments or other appropriate authority, from December 30, 1933, to not later than the dates hereinafter specified."

A list of names then follows, containing those of the two plaintiffs, with the time to which their service was continued.

Defendants contend that the provision of the resolution by which the service of the two plaintiffs was to be extended for a term *not exceeding* the periods approved by the heads of departments and not later than the terminal dates mentioned, reserved in the board of estimate the right to make the appointment for an indefinite period. While, for example, the limit for plaintiff Lazarus was December 29, 1934, they urge that this represented the maximum extension in his particular case and did not impair the right of the board to shorten the period. A reading of the resolution does not support such a conclusion, nor does the statute itself, pursuant to which the resolution was adopted, sanction it. The service extension is for a definite period, and any proposed action of the board cannot be said to be a mere carrying out of an alleged reservation contained in the resolution, but must be deemed either a rescission or a modification of that resolution. There is no contention by the plaintiffs that it is intended to rescind that resolution. The legal tangle which such action would produce is almost self-evident. It is, however, their claim, not denied by the defendants, that it is the intention to modify the resolution so as, in effect, to terminate their service by forcing their immediate retirement.

The defendants' general position is that the proposed modification of the resolution of the board of estimate is legal, because the power, generally, to amend a resolution previously adopted rests in the board. That principle is axiomatic and requires no discussion, but like all general rules, it has its exceptions. No intelligent discussion of the question whether or not the principle applies in the given situation is possible, without a study of the status of the plaintiffs as incumbents of their respective offices, in their relation to the retirement system. Perhaps the consideration of the general status of superannuated employees as affected by the provisions of subdivision 1 of section 1710 of the Greater New York Charter, may more profitably be considered first. The purpose of the retirement law in its relation to superannuated employees is learnedly treated by the late Mr. Justice BIJUR in *Haag* v. *City of New York* (130 Misc. 124; affd., 220 App. Div. 704; affd., 245 N. Y. 604). The dual function of the retirement system was there pointed out: *First*, the desire to provide for the support of faithful public officials after they attain the traditional age of three score and ten; and *second*, " by rendering removal automatic, to relieve the appointing power from the dilemna either of removing the ordinarily superannuated employee, thus leaving him without means of support, or of allowing him to continue in the service out of humanitarian motives to the manifest detriment of the service."

In the light of the second purpose emphasized in the *Haag* case, it is easy to interpret the significance of subdivision 1 of section 1710. The board of estimate must put a member of the retirement system upon the retired list when he reaches the age of seventy. In that respect its action is ministerial and not subject to the exercise of discretion. It may, however, upon request of the member, extend the term of his service for a period not to exceed two years at a time, but not extending beyond the attainment of the age of eighty, provided his department head has recommended such action and it appears advantageous to the public service. It is evident that the action of the board of estimate in extending the service beyond the age of seventy involves an exercise of discretion, upon a consideration of all the circumstances in the case, each one of which is important. *First*, the employee whose service is to be extended must request such action. Obviously, a valuable employee who is disinclined to continue in service beyond the age of seventy should not be coerced into doing so. And it is only upon his willingness to continue that the *second* condition is invoked, namely, the head of the department must find that his continuance in service is of particular advantage, if not indispensable, to the public service. And *third*, the board of estimate must concur in such view. It is clear that in exercising its discretion to retain employees beyond the age of seventy under the conditions specified in section 1710, the board acts in a capacity which is entirely different from its ministerial function in retiring employees who reach that age. In the latter capacity the board acts as administrator of the retirement system. In the former it would seem to exercise a quasi-appointing power as the chief administrative body of the city government. That such discretionary power, while made a part of chapter 26 of the Greater New York Charter, which deals with the city employees' retirement system, is not an exercise of the duties of the board as trustee of the pension system, is evident from the fact that an extension of an employee's active service is not a retirement function. Quite the contrary, it is a duty appertaining to the administration of active city affairs.

It logically follows that the continuation of the plaintiffs in service was in the nature of a reappointment for a definite period and must be governed by the rules which prevail in the tenure of persons appointed for a definite term. To avoid misunderstanding, this qualification must be made: If the original tenure of plaintiffs was one at will the reappointment, so to speak, for a definite period by the extension of their service beyond the age of seventy, would not bar removal at will. Section 95 of the Greater New York Charter is a fair indication of the general policy of the law with

reference to public officers. It reads as follows: "The mayor, may, whenever in his judgment the public interests shall so require, remove from office any public officer holding office by appointment from a mayor of The City of New York, except members of the board of education, and aqueduct commissioners, trustees of the College of the City of New York, and trustees of Bellevue and allied hospitals, and except also judicial officers for whose removal other provision is made by the constitution. No public officer shall hold his office for any specific term, except as in this act is otherwise expressly provided."

The last sentence of this section thus definitely bars appointment of a public officer for a specific term, except as "otherwise expressly provided." The tenure of plaintiff Donohue is specifically protected by section 1 of chapter 724 of the Laws of 1905, which provides that no member of the board shall be removed except for incompetency or misconduct shown after a hearing upon due notice, upon stated charges. It is likewise to be assumed that the appointment of plaintiff Lazarus by the surrogates of the county of New York was not an appointment at will. The office is not covered by section 95 of the charter, but by chapter 534 of the Laws of 1911. The term of office of the commissioner by that statute is continued " until such time as the work for which he is appointed is completed." Since he has reached the age limit, he has been continued in office for various periods upon the recommendation of the surrogates, and the last designation to December 29, 1934, is like an appointment for a definite term.

Now, if the incumbents under provision of law held their offices, prior to attaining the age limit, for a definite term, so that they could not be removed except on charges, it would seem that they hold their offices under dispensation of the board of estimate on like conditions. This must follow from the nature of the provision of the statute which, unlike the case of the ordinary appointed officer who serves at will, creates certain positions, the incumbents of which cannot be removed except on charges. If public policy dictates that persons holding certain appointive offices should not be removable at will, the same principle should apply to those same public officers when they are designated to hold over for a fixed time after they shall have reached the age limit. Otherwise, the conduct of their office would be subject to the policy of the appointing power. The law, by providing for the arbitrary removal of most public officers appointed by the executive authority, has definitely made them subject to administrative policy. By making provision for other public officers not so removable, it has expressly dictated a policy of independence for such appointees. To make such officers

removable at will after seventy and not so removable before seventy is to impair the policy of non-interference with the conduct of such officers, and to permit a method of possible coercion under penalty of having the term curtailed in the face of positive interdiction. It may be argued that the shortening of a term in case of superannuated employees is necessarily implied by the possible and not unexpected frailties of age which may disable them from completing a definite term. The unequivocal answer is that such a person is subject to removal by reason of his supervening incapacity to perform his duties. But this is equivalent to a removal for cause and is not a summary removal like the one contemplated here. Viewed in this light, it would seem that the terms of the plaintiffs could not be shortened without cause, and it remains to consider to what extent, if any, the board of estimate has a right to accomplish this result by a modification of a previous resolution.

Defendants argue in this connection that the extension of the term is an act of grace granted to the employee, which may be taken away at will. This contention leaves out of consideration the fact that the reason for permitting an employee who otherwise should be retired, to continue, is not primarily for the employee's benefit, but for the advantage of the public service. It is, therefore, vain to justify the proposed modification on the ground that it is cancellation of a mere favor. The general principle contended for, that the limitation upon the power of the board of estimate to amend a previous resolution of the body arises only where a property right has become vested, does not seem to apply in the case of officers appointed for a definite time or during good behavior.

In *Achley's Case* (4 Abb. Pr. 35, 37) the court said: " The exercise of the power of appointment to office is a purely executive act; and when the authority conferred has been exercised, it is final, for the term of the appointee." That decision leans upon the celebrated authority of *Marbury* v. *Madison* (1 Cranch, 137), from which the following language (at p. 162) is quoted: " Where an officer is removable at the will of the executive, the circumstance which completes his appointment is of no concern; because the act is at any time revocable; and the commission may be arrested, if still in the office. But when the officer is not removable at the will of the executive, the appointment is not revocable, and cannot be annulled; it has conferred legal rights which cannot be resumed. The discretion of the executive is to be exercised, until the appointment has been made. But having once made the appointment, his power over the office is terminated, in all cases, where by law the officer is not removable by him. The right to the office is then in the person appointed, and he has the absolute unconditional power of accepting or rejecting it.

"Mr. Marbury, then, since his commission was signed by the president, and sealed by the secretary of state, was appointed; and as the law creating the office, gave the officer a right to hold for five years, independent of the executive, the appointment was not revocable, but vested in the officer legal rights, which are protected by the laws of his country."

In the *Achley* case, too (at p. 38), the distinction is thus pointed out between the inherent power of a Legislature to repeal or modify a statute, and the power to recall an appointment even where it involves mere ratification by a body which otherwise exercises legislative functions: "Laws, or acts of the Legislature in the nature of laws, are repealable at the will of the lawmaker, subject to the inhibition, in the Constitution of the United States, that no law shall be passed impairing the obligation of contracts. * * * no such power exists in reference to appointments to office. When the act is performed, it is irrevocable." This summary is quoted with approval in *Matter of Fitzgerald* (88 App. Div. 434, 440).

It follows, therefore, that while the board of estimate may have fullest power to amend and repeal in matters in which it legislates, its appointment of the plaintiffs for the limited periods constituted irrevocable designations not subject to recall or to the limitation of the term. Furthermore, the designation of these public officers for definite terms constituted a vested right not subject to recall by the appointive power and only terminable for cause. True it is, as defendants submit, that an incumbent of an office usually has no vested right to it in the sense that he can prevent its abolishment. (*Matter of Sweeney* v. *Mischler*, 132 Misc. 13.) But while the office or its term continues, he has such right to retain it if the period of his appointment has not expired. And the threat to remove him is a threat of irreparable damage of which a court of equity will take cognizance. In such cases it will not relegate a party to the mere right to sue for lost salary. As is said in *State ex rel. Childs* v. *Wadhams* (64 Minn. 318, 324): "'A public office is a public trust,' and the incumbent has to some extent a property right in it, which he holds, not subject to barter and sale, but for the benefit of that political society of which he is a member. Of course, he is liable to be removed for cause." In that case the relator was appointed on March 9, 1896, by the mayor of the city and confirmed by the council, as provided by law, on March 23, 1896. One week later a motion to reconsider the confirmation was carried and the motion to confirm lost. The court held that the relator's confirmation after it had been officially promulgated could not be thus rescinded.

The principle of the irrevocability of an appointment or an election is also upheld in *State* v. *Phillips* (79 Me. 506) and *State ex rel.*

*Whitney* v. *Van Buskirk* (40 N. J. Law, 463). In *Matter of Fitzgerald* (*supra*) the same doctrine is thus stated (at p. 440): " I think the council had no power by any resolution it might enact March twentieth to withdraw and annul the consent to this appointment, previously given on March second, nor could the mayor and council together, at that time, annul or recall that appointment and make it void from the beginning. By the charter the appointee holds for a definite term; he had been vested with the office, and if he was to be deprived of it it must be by removal in the manner provided by the charter."

*People ex rel. MacMahon* v. *Davis* (284 Ill. 439) and *Attorney-General ex rel. Dust* v. *Oakman* (126 Mich. 717), which on first impression seem to set forth a contrary rule, are not really in conflict with it. In the former case a common council, after approving of the mayor's appointment of a public officer, at the *same* meeting entertained a motion to reconsider, which was laid on the table. At the next meeting the motion to reconsider was called up and the approval rescinded. It was held that the action of the council was proper within general parliamentary rules. The inapplicability of that case to the instant situation is perfectly patent. Here the proposed action is by a board differently constituted from the one in December, 1933. Besides, many intervening meetings have been held since that session.

In *Attorney-General ex rel. Dust* v. *Oakman* (*supra*) the Senate, in executive session, confirmed a nomination by the Governor. At the very *same* session a motion to reconsider was adopted, and the Senate thereupon rejected the nomination. In upholding the propriety of such action, the court approved the rule in *Marbury* v. *Madison*, that when the appointing power has once exercised its functions, it has no power to recall an appointment. But it reached the conclusion (p. 721) that " where an appointment or concurrence in an appointment is a subject of action by a deliberative body, that body may, by rules of its own, or acting under usual parliamentary rules, cast a vote upon the subject which is subject to reconsideration; * * * the appointment is not complete beyond recall until the power to reconsider has been cut off by the lapse of time."

While the board of estimate, in making appointments, is performing an executive function, nevertheless it is a deliberative body, and as such its proceedings may be said to be governed by parliamentary rules not inconsistent with the charter. By no such rule, of which the court is aware, can a determination by one board be made the subject of " reconsideration " by a board succeeding it in office. It has the general power to modify or repeal a determination of the former board. But, as we have seen, such power does not

extend to the right to rescind an appointment or to shorten a term of an appointee, whose tenure is protected by law.

The plaintiffs are entitled to an injunction to restrain any curtailment of their terms in the summary manner proposed.

The motion is, therefore, granted on condition that plaintiff furnish an undertaking in the nominal sum of $250.   Settle order.