THE PEOPLE, EX REL. LUTHER F. CONRAD, v. JEROME B. STONE.

*Elections—Ballots—Plurality of votes—School examiner—Board of school inspectors.*

1. In this country it is generally understood that, in the absence of any statutory provision expressly requiring more, a plurality of the votes cast will elect.
2. When the law requires certain officers to be elected by ballot, there is and can be no such thing as an "informal" ballot.
3. All ballots cast under statutory requirements are formal and final, if there is an election, and cannot be repeated.[1]
4. On the election of a school examiner by the board of school inspectors, the result of the ballot expresses that fact, and there is no necessity of declaring him elected.
5. It is only *elected* officers who hold until their successors are elected and qualified.
6. A school examiner *appointed* to fill a vacancy can only serve out the unexpired term.

Error to Clinton. (Smith, J.) Argued November 5, 1889. Decided December 28, 1889.

---

[1] See *School-dist. v. Root*, 61 Mich. 374.

Information in the nature of a *quo warranto* to test the legality of respondent's claimed election as a member of the board of school examiners. Respondent brings error. Judgment of ouster reversed. The facts are stated in the opinion.

*Auten & Moss* and *O. L. Spaulding,* for respondent.

*Charles M. Merrill,* Prosecuting Attorney (*H. E. Walbridge* and *Will H. Brunson,* of counsel), for the people.

CHAMPLIN, J. By section 1, chap. 12, Act No. 266, Laws of 1887, the chairmen of the boards of school inspectors of the several townships in each county are required to meet at the office of the county clerk of their county on the first Tuesday in August in each year, and elect by ballot one school examiner, who shall hold his office for two years, or until his successor shall have been duly elected and qualified.

Section 12 of the same chapter provides:

"Whenever, by death, resignation, removal, or otherwise, a vacancy shall occur in the board of school examiners of any county, other than in the office of secretary, the judge of probate of such county shall have power to fill such vacancy until the first Tuesday in August after his appointment, at which time an examiner shall be elected to fill the unexpired term by the chairmen of the boards of the school inspectors of the several townships in the county."

Under the statute in force previous to 1887 there was one school examiner elected on the first Tuesday of August, to hold his term for three years, or until his successor was duly elected and qualified; and, in case of vacancy in the board of school examiners, the judge of probate was authorized to fill such vacancy for the unexpired portion of the term.

In 1887 there were three examiners,—one whose term of office would expire on the first Tuesday of August,

1887; one on the first Tuesday of August, 1888; and one on the first Tuesday of August, 1889. The act of 1887 declared that no election for school examiner should be had in 1887, but the two examiners previously elected, whose term of office shall not have expired, should hold for the unexpired portions of the terms for which they were elected.

It appears that one S. W. Baker was one of the school examiners elected in 1885, and whose term of office would expire on the first Tuesday of August, 1888, and that he resigned his office; and Luther F. Conrad was appointed by the judge of probate to serve as school examiner for the unexpired portion of such term. It further appears that the chairmen of the several boards of school inspectors of the respective townships in Clinton county convened at the office of the county clerk of that county on the first Tuesday of August, 1888, and were called to order by the clerk, and 16 members were present, and answered to their names, and, on motion, H. U. Webb was chosen chairman of the meeting; that a motion was made, and the board proceeded to an informal ballot to elect a school examiner. Tellers were appointed, and the ballot resulted as follows: J. B. Stone received 8 votes; L. F. Conrad received 7 votes; E. M. Plunkett received 1 vote. Five more informal ballots were taken, with the same result. The record of the board proceeds to state:

"On motion of Mr. Hoffman, the board adjourned. The meeting was again called to order by the clerk, and the following members answered to their names."

The names are given, fourteen in all. The record, as made by the clerk, then proceeds:

"On motion of Mr. Winston, H. U. Webb was chosen as chairman of the meeting. On motion of Mr. Taylor, the chair appointed as tellers Messrs. Taylor and Hoffman. On motion of Mr. Taylor, the board proceeded by

ballot to elect a school examiner. The whole number of votes cast was fourteen (14). J. B. Stone received eight (8); .L. F. Conrad received five (5); E. M. Plunkett received one (1),—total, 14. Mr. Stone, having received a majority of all the votes cast, was declared duly elected. On motion of Mr. Taylor, the board adjourned."

Mr. Stone was verbally notified of his election, took the oath of office, and entered upon the duties of school examiner.

L. F. Conrad, conceiving that the election was illegal, and that in fact no election had been had, claimed that no successor had been elected, and that he, by virtue of his appointment, in 1885, was entitled to hold the office until his successor had been duly elected and qualified, namely, until the first Tuesday of August, 1890, and caused an information in the nature of a *quo warranto* to be filed in the circuit court for the county of Clinton against said Jerome B. Stone, alleging that Stone intruded into and usurped the office of school examiner, and that he (said Conrad) was lawfully entitled to the possession of the office. Plea was filed setting up that the respondent, Jerome B. Stone, was duly elected by the board of school examiners on August 7, 1888, and that he had duly qualified as such. Replication that he was not legally elected, and that no legal election was held. On the trial before the circuit judge, without a jury, in addition to the above facts, it was shown that two of the members of the board, after the first adjournment, left for home, and were not notified of the calling together of any other meeting that same day, or any other time, and knew nothing about it until after the meeting.

The circuit judge found that said Jerome B. Stone did unlawfully usurp, intrude into, and unlawfully held, the office of school examiner, and gave judgment of ouster,

and further adjudged that the relator, Luther F. Conrad, was still the legally and lawfully elected and appointed school examiner, and entitled to hold said office until his successor should be elected and qualified.

In reviewing these proceedings, it is proper to remark, in the first place, that the statute requiring the board of school inspectors to elect school examiners by ballot does not require that a majority of the whole board, nor that a majority of the votes cast, shall be necessary to elect. In this country it is generally understood that, in the absence of any statutory provision expressly requiring more, a plurality of the votes cast will elect. It is only in cases when the statute so provides that a majority of all the votes cast is necessary to the choice of an officer. McCrary, Elec. § 197; Cush. Leg. Ass. § 118; Paine, Elec. § 571; Cooley, Const. Lim. 619. Mr. Cushing says:

"In elections in which the principle of plurality is adopted, the candidate who has the highest number of votes is elected, although he may have received but a small part of the whole."

In general elections in this State we have adopted, and constantly act upon, the principle that plurality elects (How. Stat. § 143); and whenever, as, in some cases, in the board of supervisors and some municipal charters, a majority of the body voting is required, it is especially stated in the law.

It follows that Jerome B. Stone was elected upon the first ballot taken, when the whole of the members of the board were present. The law has provided for an election in case of a tie. Section 1 of chapter 12 enacts that—

"The county clerk shall be the clerk of such elections in all cases, and, in case of a tie, shall give the casting vote."

In this case the ballots were cast in such manner as to prevent a tie, but not to prevent an election.

Counsel for relator claims that there was no significance in, and there could be no election upon, an "informal ballot." We cannot accede to such claim. When the law requires certain officers to be elected by ballot, there is and can be no such thing as an "informal ballot." All ballots cast under statutory requirements are formal and final, if there is an election, and cannot be repeated. "Informal ballots" are sometimes taken in a caucus or in a nominating convention; but they have no place in an election required by law for the election of officers. Neither was it necessary that Mr. Stone should have been declared elected. The result of the ballot expressed that fact, and it was the duty of the clerk to notify him of his election.

But, had there been no election, the relator was not entitled to the office. It is only *elected* officers who hold until their successors are elected and qualified. Mr. Conrad was appointed to fill a vacancy, and he could only serve out the unexpired term. Had there been no election by the board, as claimed by relator, there would have been a vacancy in the office which the judge of probate could have filled by appointment until the first Tuesday of August after the appointment.

The judgment of the circuit court must be reversed, with costs of both courts against relator, and the incumbent, Jerome B. Stone, is confirmed in his office of school examiner.

SHERWOOD, C. J., MORSE and CAMPBELL, JJ., concurred. LONG, J., did not sit.