ATTORNEY GENERAL, *ex rel.* DUST, v. OAKMAN.

126   717
f155   1429

1. PUBLIC OFFICERS—ACCEPTANCE OF SECOND OFFICE—VACANCY —ELIGIBILITY—STATE TAX COMMISSIONERS.

   A person who, while occupying one office, accepts another the duties of which are incompatible with the first, *ipso facto* vacates the first office; but his incumbency of the first office does not disqualify him to accept the second, nor by continuing to exercise the duties of the first pending a legal determination of his right to the second does he elect not to accept the second office.

   So *held* where a city assessor was appointed member of the board of State tax commissioners.

2. SAME—APPOINTMENT BY GOVERNOR—CONSTITUTIONAL LAW.

   The office of member of the board of State tax commissioners not being a constitutional one, it was competent for the legislature to fix the term thereof; and hence the provision of section 145 of Act No. 154, Pub. Acts 1899, that a person appointed by the governor to fill a vacancy on the board shall hold office "until the next meeting of the legislature after such appointment, and no longer," does not contravene section 3, art. 8, of the Constitution, vesting in the governor the power of appointment to fill a vacancy in "any State office."

3. SAME—CONFIRMATION BY SENATE—RECONSIDERATION.
    Where the State senate concurred in a nomination to office
      made by the governor under a statute vesting the power of
      appointment in him "by and with the advice and consent of
      · the senate," it had power at the same session, before any
      action on the vote had been taken, to reconsider its vote, and
      refuse to consent to the appointment, since in concurring in
      such appointment it exercised a legislative function, revoca-
      ble under the rules governing that body, and not a *quasi*
      executive function, incapable of revocation when once exer
      cised.

*Quo warranto* proceedings by Horace M. Oren, Attor-
ney General, on the relation of William T. Dust, against
Robert Oakman, to determine the title to the office of
member of the board of State tax commissioners.  Sub-
mitted May 14, 1901.  Judgment of ouster entered May
21, 1901.

*Horace M. Oren*, Attorney General (*H. M. & D. B.
Duffield*, of counsel), for relator.

*Jerome W. Robbins* (*Fred A. Baker, T. E. Tarsney,
C. D. Joslyn, Allen B. Morse*, and *Benton Hanchett*,
of counsel), for respondent.

MONTGOMERY, C. J.  This controversy involves the
title to the office of member of the board of State tax
commissioners.  The relator's title is asserted under an
appointment by the governor, duly confirmed by the
senate, on February 13, 1901, for the term ending
December 31, 1904.  The respondent claims title under an
appointment made December 18, 1899, for the same term,
which appointment, he alleges, was, on the 3d day of Jan-
uary, 1900, duly confirmed by the senate.  The facts
are not in dispute.  Before referring to the history of the
case in detail, however, we will consider a preliminary
question concerning the title of relator.

1. The plea avers that prior and subsequently to the re-
lator's appointment he was, and that he still is, exercising
the functions and receiving the emoluments of the office

of city assessor of the city of Detroit, an office the duties of which are incompatible with those of the office here in controversy, and that by retaining said office he has elected not to accept the appointment of the governor. The relator asserts that this question is not properly raised; but we prefer not to deal with the case in any technical spirit, and consider the question as properly before us. The fact that the relator held the office of city assessor did not render him ineligible to appointment. It is true, he might have made assessments which may be subject to review by the State board. So may a circuit judge, while sitting at circuit, render decisions which are subject to review by this court; but no one ever supposed that for this reason a circuit judge should be considered as ineligible for election as a member of this court. The continued exercise of the duties of the office of assessor of Detroit pending the determination of the relator's title stands upon similar ground. The rule is that the acceptance of a second office, incompatible with the one already held, vacates the first. This was held in *Attorney General, ex rel. Moreland,* v. *Detroit Common Council,* 112 Mich. 145 (70 N. W. 450, 37 L. R. A. 211). The result of the holding in that case is that, upon acceptance of the office relator is now contending for, he will *ipso facto* vacate the office of city assessor. The title to *that* office will therefore fail him, but not the title to *this.* He is not required to sit between two stools. He can have a sitting, but only one.

2. The respondent's commission purports to confer the office upon him until December 31, 1904, and it is contended by respondent's counsel that, irrespective of the question relating to the validity of the action of the senate hereinafter referred to, the appointment is valid, for the reason that a vacancy existed in the office, and that, under section 3 of article 8 of the Constitution, the power to appoint to fill a vacancy in any State office is vested in the governor, the only limitation of that power being that, in case the senate is in session, the vacancy shall be filled by

and with the advice and consent of the senate; and that, although the statute creating the board of State tax commissioners provides, "In case a vacancy in the office occurs otherwise than by expiration of the term, the governor shall have power to appoint to fill such vacancy at any time, and the person so appointed shall hold office until the next meeting of the legislature after such appointment, and no longer" (Act No. 154, Pub. Acts 1899, § 145), the power to fill the vacancy for the full unexpired term still exists, as it is not within the power of the legislature to withdraw this authority from the governor. A glance at the statutes shows that the legislative construction of this constitutional provision from the time of its adoption has been that it related to such State officers as are named in the same article of the Constitution. See 1 Comp. Laws 1897, §§ 1168, 1172. The office in question is not a constitutional office. It was, therefore, competent for the legislature to fix the term. The term fixed by this act in a certain contingency expires at the convening of the legislature.

3. The most important question in the case is whether the appointment of the respondent was regularly and irrevocably confirmed by the senate. On the 3d day of January, 1900, the message of the governor nominating respondent as a member of the board was before the senate in executive session. The committee to whom the nomination had been referred reported recommending "that the senate advise and consent to the said nomination to office." The question being on concurring in the recommendation of the committee, the senate concurred in the recommendation by the requisite aye and nay vote. At the same executive session a motion was made to reconsider the vote "by which the senate advised and consented to the nomination of Mr. Oakman." The motion to reconsider prevailed. The question then recurring on the original motion to concur in the report of the committee, the senate refused to concur. It will be seen that the question is whether the senate at the same session, and

before any action based upon the first vote has been taken, may reconsider the vote by which it has advised and consented to the nomination of the governor.

Rule 40 of the senate provides:

"When a question has been once put and decided, it shall be in order for any member to move the reconsideration thereof; but no motion for the reconsideration of any vote shall be in order unless the bill, resolution, *message,* report, amendment, or motion upon which the vote was taken shall be in the possession of the senate; nor shall any motion for reconsideration be in order unless made on the same day the vote was taken, or within the next two days of the actual session of the senate thereafter; nor shall any question be reconsidered more than once."

It is contended by the respondent that the senate, in consenting to an appointment by the governor, is performing an executive, and not a legislative, duty, and that, when it has once given its consent, it has exhausted its power; and it is further contended that rule 40 has no application. It is conceded by relator, and has been held by this court, following *Marbury* v. *Madison,* 1 Cranch, 137, that, when the appointing power has once exercised its functions, it has no power to recall an appointment. See *Speed* v. *Detroit Common Council,* 97 Mich. 198 (56 N. W. 570). The question recurs whether, where an appointment or concurrence in an appointment is a subject of action by a deliberative body, that body may, by rules of its own, or acting under usual parliamentary rules, cast a vote upon the subject which is subject to reconsideration; for, if such course is permissible, the appointment is not complete beyond recall until the power to reconsider has been cut off by the lapse of time.

Fortunately, authorities bearing upon this subject are not wanting, and it only remains to apply them. In *Wood* v. *Cutter,* 138 Mass. 149, the school committee of a town had authority to elect a superintendent. The committee voted to elect relator. At the same meeting a motion to reconsider was made, and carried, and the

126 MICH.—46.

respondent was elected.    The language of Holmes, J., is pertinent to this case:

"It begs the question to say that the board had once definitively voted in pursuance of the instructions of the town meeting, and therefore was *functus officio*, and could not reconsider its vote.   The vote was not definitive if it contained the usual implied condition that it was not reconsidered in accordance with ordinary parliamentary practice; and it must be taken to have been passed subject to the usual incidents of votes, unless some ground is shown for treating it as an exception to common rules."

The ruling in the case cited was reaffirmed in the case of *Reed* v. *School Committee*, 176 Mass. 473 (57 N. E. 961).

The case of *State* v. *Foster*, 7 N. J. Law, 101, is a leading case on this question.   The power to appoint a clerk for the county of Gloucester was vested in a joint meeting of the legislative council and general assembly. At such a session a vote was taken, and a majority voted for relator, but the presiding officer failed to declare the election under the mistaken view that a majority of all members-elect was required, and that a majority of a quorum was not enough to elect.   The joint meeting then proceeded to elect respondent.   The court determined the case distinctly upon the ground "that all deliberative assemblies during their session have a right to do and undo, consider and reconsider, as often as they think proper, and it is the result only which is done."   It was further said, "So long as the joint meeting were in session, they had a right to reconsider any question which had been before them, or any vote which they had made."   This case was approved in *Whitney* v. *Van Buskirk*, 40 N. J. Law, 467, and by the supreme court of Massachusetts in *Baker* v. *Cushman*, 127 Mass. 105.   The case of *People* v. *Mills*, 32 Hun, 459, fully sustains the contention of relator.    Also, see *Conger* v. *Gilmer*, 32 Cal. 75.

It is not clear that *State* v. *Barbour*, 53 Conn. 76 ( 22 Atl. 686, 55 Am. Rep. 65 ), in which the majority opinion is claimed to support the contention of respondent, may

not be distinguished.    That opinion recognizes that a convention or body may determine in advance that a ballot shall not be final; but, however this may be, we are not prepared to assent to all the reasoning in the case.    The overwhelming weight of authority sustains the relator's contention, and we are convinced that the New Jersey and Massachusetts cases are sound in principle.

Judgment of ouster will be entered.

The other Justices concurred.