ATTORNEY GENERAL, ex rel. McKENZIE, v. WARNER.

OFFICERS—CORPORATION AND SECURITIES COMMISSIONER—CONFIRMA-
TION BY SENATE—EQUALLY DIVIDED COURT.
    Information in nature of *quo warranto* brought by attorney
    general on relation of appointee of present governor to office
    of corporation and securities commissioner against appointee
    of preceding governor whose appointment was confirmed by
    present senate is dismissed, the court being equally divided
    (Act No. 13, Pub. Acts 1935).

Information in the nature of *quo warranto* by Herbert J. Rushton, Attorney General, upon the relation of Walter I. McKenzie, against Howard M. Warner to determine title to the office of Michigan Corporation and Securities Commissioner. Submitted June 12, 1941. (Docket No. 75, Calendar No. 41,577.) Information dismissed October 6, 1941.

*E. Cyril Bevan, Robert D. Heitsch, John P. Laughna, Joseph Zwerdling, Edmund C. Shields,* and *Friedman, Meyers & Keys,* for plaintiff.

*Louis H. Fead (Miller, Canfield, Paddock & Stone,* of counsel), for defendant.

NORTH, J. The attorney general, upon the relation of a citizen and taxpayer, has filed an information in the nature of *quo warranto* asking that Howard M. Warner be required to show by what authority he claims to hold the office of State corporation and securities commissioner for a term expiring September 20, 1943. The facts are not in dispute. On September 20, 1935, the then governor appointed a corporation and securities commissioner for a term ending September 20, 1939, by virtue of Act No. 13, Pub. Acts 1935 (Comp. Laws Supp. 1940, §§ 9769-1 to 9769-4, Stat. Ann. §§ 19.781-19.784). The legislature was not in session and the appointment was not submitted to the senate for confirmation. In January, 1937, the then governor appointed another individual as commissioner for the unexpired term ending September 20, 1939, which was confirmed by the senate, the appointee qualified, and filled the office until the expiration of term, September 20, 1939. At that time, the then governor, Luren D. Dickinson, appointed this defendant, Howard M. Warner, to said office for a full term of four years, to expire September 20, 1943. The senate was not then in session. A commission was issued, Warner qualified, and has since held the office continuously to the present time. On December 20, 1940, Governor Dickinson signed and delivered to the secretary of the senate a message advising that during the recess of the legislature he had appointed the defendant to the office of corpora-

tion and securities commissioner for the term expiring September 20, 1943, and requesting consideration and action. Governor Dickinson's term ended December 31, 1940, and Governor Van Wagoner took office January 1, 1941. The legislature convened on that date (the first Wednesday in January) in accordance with the Constitution. On that day, and prior to the convening of the senate, Governor Van Wagoner transmitted to the president of the senate a communication presenting for the consideration and confirmation of the senate the appointment of the relator herein, Walter I. McKenzie, for the office of corporation and securities commissioner to succeed Howard M. Warner, until December 31, 1942. The date of expiration of term was obviously a mistake, and it was corrected by the governor on January 7th to read "for the term ending December 31, 1944." Both appointments were received by the senate and read on January 2, 1941, and referred to the proper committee. On February 5th, the senate, by regular procedure, confirmed the appointment of defendant Howard M. Warner as corporation and securities commissioner for the term ending September 20, 1943.

Plaintiff concedes that the appointment of Warner by Governor Dickinson, September 20, 1939, was valid and that Warner became the legal incumbent, but contends that such appointment could not be legally effective for a period beyond the close of the next succeeding session of the legislature, which would be the present session. It seems to be conceded for the purpose of this decision that the legislature is still in session and, therefore, the information might be prematurely filed. However, in the interests of good government, and at the request of interested parties, the question presented being of public importance, we accept jurisdiction for the

purpose of decision herein. See *Oakland County Treasurer* v. *Auditor General,* 292 Mich. 58, 66.

The applicable provision (section 1) in Act No. 13, Pub. Acts 1935 (Comp. Laws Supp. 1940, § 9769–1, Stat. Ann. § 19.781), reads as follows:

"A commission to be known and designated as the Michigan corporation and securities commission is hereby created. Immediately upon the taking effect of this act a corporation and securities commissioner shall be appointed by the governor for the term of four years, subject to confirmation by the senate. * * * Upon the expiration of the said term a successor shall be appointed in like manner for a term of four years and until his successor is appointed and qualified."

It is apparent from the act that for the purposes of this case three events are essential to the legal appointment of a successor-commissioner for a full term: (1) Expiration of term of the incumbent; (2) appointment by the governor; (3) confirmation by the senate.

In the instant case, it is agreed that the following circumstances exist: (1) Expiration of term of the incumbent, Carl A. Olson, September 20, 1939; (2) the appointment at that time by the then governor (Dickinson) of the defendant, Howard M. Warner; (3) the acceptance and qualifying for office by Warner, and his acting as commissioner up to and including the present time; (4) that the senate was not in session at the time of his appointment and it was not confirmed prior to January 1, 1941; (5) that Dickinson, while governor (on December 20, 1940), sent a message to the senate, received by the secretary of the senate, giving official notice of the appointment, asking for the consideration and action of the senate; (6) that the senate officially received

this communication January 2, 1941, and referred it to the proper committee; (7) that the senate officially confirmed this appointment February 5, 1941.

In the absence of any intervening circumstance, it would be apparent that nothing further would be necessary to complete the appointment of the defendant for the full term. Plaintiff alleges several reasons why the appointment should be considered to be only during the present session of the legislature, and not for the full term.

It is claimed that because Dickinson's term ended December 31, 1940, his message could not thereafter be submitted to the incoming senate; therefore, the senate could not legally confirm this appointment. Plaintiff relies upon *People, ex rel. Attorney General,* v. *Haggerty,* 167 Mich. 682. In that case, we were considering an appointment to fill vacancy under the following statutory provision [*]:

"Whenever a vacancy occurs in either of such boards, *otherwise than by the expiration of a term,* such vacancy shall be filled by the governor for the remainder of the term, by and with the advice of the senate, if in session. *If the senate is not in session, the appointment shall continue until the next regular session of the senate.*"

The appointment had been made while the senate was not in session, and we held that it continued only until the next regular session of the senate. It necessarily followed that the attempt of a governor, whose term of office had ended on December 31st, to make an appointment after the next regular session had started was a nullity. A mere comparison of the statute there construed with the statute now under consideration discloses the distinction. In

---

[*] 1 Comp. Laws 1897, § 2081, now 3 Comp. Laws 1929, § 17545 (Stat. Ann. § 28.1372).—REPORTER.

that case, the outgoing governor attempted to make
an appointment after his term expired. In the
present case, the outgoing governor made the ap-
pointment during his term and notified the senate,
seeking confirmation, during his term. His part in
making the appointment was complete during his
term.

It is claimed that the act of the outgoing governor
in submitting his message to the secretary of the
senate was not the official action of submitting the
message to the incoming or "new" senate. The
office of secretary of the senate is a continuous one,
and the secretary performs many duties as such in
the interim between sessions. He is the official
keeper of the senate records and documents, and is
paid an annual salary. 1 Comp. Laws 1929, §§ 5-
13 *, 42 (Stat. Ann. §§ 2.31-2.36, 2.41, 2.51, 2.52,
2.154). The outgoing governor not only may submit
reports and messages to the next legislature but is
required both by statute and by the Constitution to
do so. See Constitution (1908), art. 6, §§ 5, 9; art. 9,
§ 7. Unless the secretary of the senate or some other
senate official may receive such messages and trans-
mit the same to the senate after the next legislature
convenes, there would be an unfortunate hiatus be-
tween legislative sessions not in accord with good
government.

It is claimed that because the message of the out-
going governor was received by the senate under the
business of "Messages from the Governor," it was
not legally received and, therefore, was a nullity.
The senate is master of its own rules. It matters
not under what designation the senate chooses to re-
ceive messages and communications.

---

* 1 Comp. Laws 1929, § 13, was amended by Act No. 64, Pub. Acts
1937 (Comp. Laws Supp. 1940, § 13, Stat. Ann. 1940 Cum. Supp.
§ 2.52).—REPORTER.

It is claimed that because the outgoing governor's term ended December 31, 1940, and his successor thereafter submitted the name of another appointee to the senate for confirmation, the senate could not thereafter legally act upon the former appointment. Such a conclusion would obviously be an infringement by the executive department upon the powers of the legislative department. The message of the outgoing governor was legally received by the legislature. The incoming governor did not attempt to withdraw it, and could not interfere with the right of the senate to act upon it by submitting another appointment. The Constitution forbids the executive (who makes the appointment) from exercising the powers of the senate.

"The powers of government are divided into three departments: The legislative, executive and judicial." Constitution (1908), art. 4, § 1.

"No person belonging to one department shall exercise the powers properly belonging to another, except in the cases expressly provided in this Constitution." Constitution (1908), art. 4, § 2.

In this field of the law in an early case the supreme court of California reached the following conclusion as stated in the syllabus of the opinion:

"Where the appointment to an office is vested in the governor, with the advice and consent of the senate, and the term of the incumbent expires during the recess of the senate, the governor has the right to fill such vacancy, and his appointment vests in the appointee the right to hold and discharge the duties of such office for the full term, and subject only to be defeated by the nonconcurrence of the senate." *People, ex rel. Attorney-General*, v. *Addison*, 10 Cal. 1.

Both the factual and legal aspects of *Barrett* v. *Duff,* 114 Kan. 220 (217 Pac. 918), are strikingly similar to those in the instant case. We quote two of the headnotes:

"Where the appointment to an office is vested in the governor, with the advice and consent of the senate, and the term of the incumbent expires during a recess of the legislature, and the governor appoints a successor to the office, *held,* that the appointment vests in the appointee a right to hold for his full term, subject only to be defeated by nonconcurrence or rejection of the senate.

"Where the power of the governor has been exercised by the appointment to an office and the appointee has qualified and been vested with the powers and prerogatives of the office, neither the governor nor his successor has any further control over the appointment unless and until the appointee has been rejected by the senate."

Quite an exhaustive review of related decisions will be found in *People, ex rel. Emerson,* v. *Shawver,* 30 Wyo. 366 (222 Pac. 11). The Wyoming Constitution provided that the appointment should be "by the governor of the State and confirmed by the senate." We quote from the syllabus:

"The appointment of a State engineer under Constitution, art. 8, § 5, during senate recess, could be confirmed at the next session of the senate, although the term of office of the governor making the appointment had then expired."

And, touching a question with which we are not concerned in the instant case, the Wyoming court further asserted that the senate had the right so to confirm although "neither the new nor the old governor requested a confirmation, and the senate was without executive communication concerning the appointment."

The foregoing and other authorities which might be cited are in accord with our holding herein that under the circumstances of this case the senate in session in 1941 had the right to consider and confirm Governor Dickinson's appointment of the defendant made in December, 1940, and submitted to the senate for its action.

The conclusion of Mr. Justice CHANDLER that defendant's term of office would expire at the close of the present session of the legislature is based upon the assumption that Act No. 13, Pub. Acts 1935, is not complete in itself and therefore resort must be had to other statutory provisions quoted in his opinion. In substance Justice CHANDLER states that in Act No. 13, Pub. Acts 1935, there is "complete silence upon the question of appointment during the recess of the legislature;" and for that reason he asserts the necessity of resort to 1 Comp. Laws 1929, §§ 3361, 3364 (Stat. Ann. §§ 6.704, 6.707). I cannot agree that Act No. 13, Pub. Acts 1935, is silent on appointments during recess. Instead, under the terms of the act, the original appointment was contemplated as a recess appointment. The act provides: "Immediately upon the taking effect of this act (90 days after the adjournment of the legislature) a corporation and securities commissioner shall be appointed by the governor for the term of four years, subject to the confirmation by the senate." And further the act provides: "Upon the expiration of the said term a successor shall be appointed in like manner for a term of four years and until his successor is appointed and qualified." This latter provision clearly applies to the appointment of a successor official regardless of whether "the expiration of said term" occurs during a recess or during a session of the legislature.

The gist of plaintiff's contention is that because Governor Dickinson was not elected to succeed himself, therefore the right which the senate otherwise unquestionably would have had to confirm defendant's appointment was nullified. We know of no constitutional provision or statutory enactment to that effect. The powers of the senate are not dependent upon who at the moment happens to occupy the official position of governor. As above noted, every phase of this appointment in which Governor Dickinson participated occurred during his term as governor, and the occasion for such action arose during his term of office, not after he was out of his office. It would hardly be contended that in case of the death of a governor who had submitted an appointment for confirmation to the legislative body, that body could not confirm such appointment subsequent to the demise of the executive.

In legal effect the facts and circumstances of the instant case coincide with those in a *quo warranto* proceedings decided by the supreme court of South Dakota. We quote the pertinent portion of the decision.

"He [relator] further contends that it is essential to the validity of Halladay's appointment that it be confirmed or concurred in by the senate, and that, since Governor Gunderson's term of office had expired before any action was taken on the appointment by the senate, there was no joint or mutual consent by the governor and senate to Halladay's appointment; that, the term of the governor who appointed Halladay having expired, the senate on January 7th assumed to confirm the action of one who was then only a private individual, and its confirmation could have no effect. * * *

"We cannot agree with relator's reasoning that, since the governor's appointment and the senate's

confirmation must be concurrent as to the subject of the appointment, and Governor Gunderson's term of office had expired before the senate took any action, there could therefore have been no concurrence by the Governor with the senate in its action on January 7th with reference to the appointment. This ignores the obvious fact that the office of governor is a continuing one, irrespective of the person who occupies it. In this case the appointment of Halladay remained in force until it was acted upon by the senate. On January 7th, while it was still in force, the senate confirmed it. The appointment thereupon became complete, Halladay qualified, and has ever since been discharging the duties of the office, and therefore no vacancy existed on December 28, 1927, at the time the attempted appointment of relator [as successor to Halladay] was made." *State, ex rel. Kriebs,* v. *Halladay,* 52 S. D. 497, 500, 501 (219 N. W. 125).

Our comparatively recent decision in *Attorney General, ex rel. Eaves,* v. *State Bridge Commission,* 277 Mich. 373, in which Mr. Justice BUSHNELL wrote for the Court, is in accord with the above-cited authorities insofar as they hold that an interim appointee has title to the office until his appointment is adversely passed upon by the senate. Our syllabus reads:

"Under statute creating a State bridge commission and requiring that members be appointed by the governor with the advice and consent of the senate, interim appointees are assumed to have all powers granted by the act until senate passes adversely upon such appointments."

Act No. 13, Pub. Acts 1935 (Stat. Ann. § 19.781 *et seq.*), is a special act creating for the first time the office of corporation and securities commissioner. By this act, powers and duties previously exercised

and performed by the Michigan securities commission and certain powers and duties previously exercised and performed by the secretary of State were combined and delegated to the newly-created office. If, as we hold, the act itself determines when the term of office of defendant will expire, under the circumstances of this case, there is no occasion to resort to other prior acts to ascertain the answer. Act No. 13, Pub. Acts 1935, is the last legislative enactment applying to the term of office of the commissioner and it controls. *Attorney General, ex rel. Dust,* v. *Oakman,* 126 Mich. 717 (86 Am. St. Rep. 574); *Attorney General, ex rel. Owen,* v. *Joyce,* 233 Mich. 619; *Heims* v. *School District,* 253 Mich. 248; *Attorney General, ex rel. Lumley,* v. *Schulz,* 262 Mich. 271. This special act is complete in itself. As noted just above, there is no need or justification for resorting to prior general statutes wherein may be found provisions fixing the tenure of office which are in conflict with those embodied in this special act. To do so would be in violation of the legislative intent expressed in the special act. The defendant's appointment made by Governor Dickinson during his term of office, having been regularly confirmed by the senate and appointee having duly qualified, vests in him title to the office of commissioner for the full term of four years which will expire September 20, 1943.

The senate received the appointment of the defendant to the office of corporation and securities commissioner. The senate likewise received from the incoming governor the appointment of the relator herein to the same office. This put the matter up to the senate. If the senate had confirmed the appointment of the relator, he would at the proper time have been entitled to qualify and hold the office, and there might have been a basis for the

present proceeding. Such action would have been in effect a refusal to confirm the appointment of Warner. However, the senate chose to confirm Warner's appointment, thereby making it complete. There has been a concurrence of the essential requirements to a completed appointment for the term ending September 20, 1943, in accordance with Act No. 13, Pub. Acts 1935, viz: appointment by the governor, and confirmation by the senate. The full appointing power has been legally exercised.

Plaintiff's information in the nature of *quo warranto* is dismissed, but without costs.

Boyles, Wiest, and Butzel, JJ., concurred with North, J.

Chandler, J. This proceeding in *quo warranto* was instituted by the attorney general of the State of Michigan upon the relation of Walter I. McKenzie as a citizen, taxpayer, and duly qualified elector of this State against Howard M. Warner asking the said defendant to show by what authority he claims to hold the office of Michigan corporation and securities commissioner for a term expiring September 20, 1943.

From the facts as stipulated by counsel for the respective parties it appears that the then governor, Frank Fitzgerald, appointed Alice R. Alexander to the office of corporation and securities commissioner for a term ending September 20, 1939, by virtue of Act No. 13, Pub. Acts 1935 (Comp. Laws Supp. 1940, §§ 9769-1 to 9769-4, Stat. Ann. §§ 19.781–19.784), section 1 thereof providing in part as follows:

"A commission to be known and designated as the Michigan corporation and securities commission is hereby created. Immediately upon the taking effect of this act a corporation and securities commissioner

shall be appointed by the governor for a term of four years, subject to confirmation by the senate. * * * Upon the expiration of said term a successor shall be appointed in like manner for a term of four years and until his successor is appointed and qualified. Vacancies shall be filled in the same manner as is provided for the appointment in the first instance."

This appointment was not submitted to the senate for confirmation when it subsequently convened in special session held December, 1936, nor at its regular session in 1937, and though the appointee qualified and entered upon the discharge of the duties of the office until January, 1937, her appointment was never confirmed.

Thereafter, on January 13, 1937, former Governor Murphy appointed Carl A. Olson to said office for a term expiring September 20, 1939, confirmation of the appointment being made by the senate on January 15, 1937. Mr. Olson qualified and discharged the duties attending the appointment to the expiration of his term.

On or about September 11, 1939, former Governor Luren D. Dickinson appointed defendant herein to the office of corporation and securities commissioner for a term of four years, to commence September 21, 1939, and to expire September 20, 1943. The following day, Governor Dickinson issued to the defendant a commission as such officer, and having duly qualified, Mr. Warner entered upon the discharge of the duties of his office.

The senate was not in session at the time of this appointment and did not convene until January 1, 1941. However, on December 20, 1940, Governor Dickinson caused a communication to be delivered to the secretary of the senate covering appointments of 59 individuals to 27 boards and commissions of

this State, and as pertinent to this suit, reading as follows:

"To the presiding officer and members of the senate:

"During the recess of the legislative vacancies occurring in the State offices to be filled by the governor and with the advice of the Senate, have been duly filled by me with the following appointments:

"Michigan Corporation and Securities Commissioner:

"Howard M. Warner, Farmington, to succeed Carl A. Olson. Appointed Sept. 11, 1939. Term expires September 20, 1943.

"This list of appointments is respectfully presented for your consideration and action.

Respectfully yours,
L. D. DICKINSON
Governor"

Governor Van Wagoner, successor to Governor Dickinson, took office on January 1, 1941, and having been duly sworn in office, signed a message or communication the same day and transmitted it to the president of the senate, presenting for its consideration and confirmation certain appointments to State office including that of Michigan corporation and securities commissioner, naming relator herein, Walter I. McKenzie, to succeed Howard M. Warner, for a term to expire December 31, 1942, which was later changed to December 31, 1944. The following day the governor executed a commission of appointment to office to Mr. McKenzie which was countersigned in proper form by the secretary of State but never delivered to relator prior to the institution of this proceeding.

The message of Governor Dickinson of December 20, 1940, was "received and read" by the senate on

January 2, 1941, and over the objection that the senate was operating under the order of ''Messages from the Governor'' the president referred the message to the committee of senate business, pursuant to Senate Rule 28, providing:

''All nominations to office submitted by the governor, and all other executive business shall be referred to the committee on senate business and shall be reported upon by such committee with all convenient speed.''

On January 21, 1941, at the request of the Honorable Joseph A. Baldwin, chairman of the senate committee on senate business, to which the messages of former Governor Dickinson and Van Wagoner had been referred, the attorney general rendered an opinion holding that the senate had the right to confirm the appointment of defendant herein as made by the former governor at a time when the senate was not in session. Whereupon, on February 5, 1941, the senate advised and consented to the nomination of Howard M. Warner as submitted by the former governor in his message of December 20, 1940.

Conceding that upon the expiration of the term of Mr. Olson, the incumbent, Governor Dickinson had the statutory authority to appoint a successor, relator denies that he had the authority to make a recess appointment which would continue beyond the close of the next succeeding legislative session where the governor has not been re-elected and, therefore, qualified to submit the names of his appointees to the next session of the legislature for confirmation.

Such concession immediately raises the question of the jurisdiction of the court to pass upon the merits of the instant proceeding at this time.

It should be noted at the outset that all parties herein have submitted the determination of this suit to the court in good faith, and by this proceeding have raised problems which touch the very foundation of orderly government. It cannot be denied that sound government demands a quiet, peaceable and certain succession to public office. Nor are the parties, by failing to raise any question of prematurity of suit and affirmatively submitting this case upon its merits, alone in their request that this court take jurisdiction. The chief executive officer of the State has, by affidavit, solicited the opinion of the judiciary to the end that all branches of the government may be properly advised as to their rights and powers with reference to appointments submitted by former governors.

Aside from the necessities of orderly government, there exists ample authority sanctioning the determination of this suit upon its merits notwithstanding the concession made. It is said in 1 C. J. p. 1152, § 399 (2) : "The premature commencement of an action is not a jurisdictional matter, but is one which may be waived, as by a failure seasonably to interpose an objection upon this ground; and it is ordinarily held that if defendant, without objection, appears and pleads to the merits of the action, he cannot thereafter object that it was prematurely commenced."

"A plaintiff's right to avail himself of a legal remedy is not impaired merely by inaction or delay in seeking that remedy, provided he does not delay so long as to be affected by the doctrine of laches or the statute of limitations. On the other hand, an action cannot be maintained if it is commenced before the accrual of the cause of action which is sought to be enforced. Such an action should be dismissed without prejudice to the plaintiff's right

to begin a new action on the accrual of the cause of action, *upon proper and timely objection being made* the nonexistence of a cause of action when the suit was started is a fatal defect which cannot be cured by the accrual of a cause pending suit." 1 Am. Jur. p. 454.

So it was said in *Lake Shore & M. S. R. Co.* v. *People,* 46 Mich. 193, 209, 210:

"A question was suggested whether, admitting the position taken by the State to be correct, any suit would lie until the auditor general of his. own motion or by *mandamus* had charged the tax sought to be recovered. As I understood counsel for the railroad company, they did not wish to press this objection, if upon assessment hereafter being made, a recovery could be had. The company desired, and the public interests demand, that the entire matter in dispute should be passed upon on the merits. In such cases courts do frequently pass upon the merits, where the objection does not go to the jurisdiction of the court. See *Youngblood* v. *Sexton,* 32 Mich. 406 (20 Am. Rep. 654)."

No objection having been made to the prematurity of the proceeding, the court may pass upon the merits of the controversy, particularly where, as here, questions of high public interest are involved.

The principal issue which thus confronts the court is whether the senate may lawfully consider and confirm the recess appointment of a former governor who was not in office when the senate convened but which received his communication pertaining to recess appointments and acted favorably thereon, and by such action empower the appointee to hold office for a full term extending beyond the close of the next session of the legislature.

Plaintiff argues that the portion of 1 Comp. Laws 1929, § 3361 (Stat. Ann. § 6.704), which was added

to Rev. Stat. 1846, chap. 15, entitled "Resignations, Vacancies and Removals, and of Supplying Vacancies," by Act No. 172, Pub. Acts 1851, entitled "an act to amend sections three, fourteen and fifteen of chapter fifteen of the revised statutes of 1846, in relation to vacancies in office," section 14 thereof being entitled "Supplying Vacancies," controls the appointment of the corporation and securities commissioner upon the expiration of the term of the incumbent when the senate is not in session. That section reads:

"and when, during the recess of the legislature, the term of office of any officer appointed by the governor alone, or by the governor, with the advice and consent of the senate, or of both branches of the legislature, or by the legislature without the concurrence of the governor, shall expire, the governor shall have power to appoint some suitable person to such office and such person shall hold such office, unless sooner removed by competent authority, until the close of the next session of the legislature, or until his successor is appointed, or elected and qualified."

Reliance is also placed upon 1 Comp. Laws 1929, § 3364 (Stat. Ann. § 6.707), providing:

"SEC. 17. All officers appointed by the governor during the recess of the legislature, shall continue to exercise the duties of their respective offices until the close of the next succeeding session, unless others shall be appointed in their stead by competent authority, and shall have entered upon the discharge of their respective duties."

This position is contested by defendant who says that unless the amendment made by Act No. 172, Pub. Acts 1851, above quoted, be construed to refer to vacancies in office, the title of the act is insufficient and in violation of Michigan Constitution of

1908, art. 5, § 21, or in the alternative, if the amendment be held to refer to vacancies, that both sections were superseded and repealed by implication by Act No. 199, Pub. Acts 1923 (1 Comp. Laws 1929, § 3365 [Stat. Ann. § 6.711]), providing as follows:

"Whenever a vacancy shall occur in any elective or appointive State office, other than the office of senator or representative in the State legislature or representative or senator in Congress or a judge of a court of record, the governor shall fill such vacancy by appointment for the remainder of the unexpired term of such office."

In any event, says defendant, a special and particular law, Act No. 13, Pub. Acts 1935, created the office, established the conditions of appointment and tenure, and is controlling, and further that Act No. 13, being the later law, prevails.

It is clear that upon the expiration of Mr. Olson's term in 1939 a vacancy did not occur in the office within the strict meaning of our statute (1 Comp. Laws 1929, § 3350 [Stat. Ann. § 6.693]) or the authorities.

As is said in 22 R. C. L. pp. 437, 438, § 91:

"The word 'vacancy' as applied to a public office has no technical meaning. Its ordinary and popular meaning is that the office is unoccupied and without an incumbent who has lawful right to continue therein until the happening of some future event. As a general rule when a new office is created, a vacancy at once exists. Hence the term 'vacancy' applies to an existing office without an incumbent, although it has never been filled. * * * An office is not vacant so long as it is supplied in the manner provided by the Constitution or law with an incumbent who is legally qualified to exercise the powers and perform the duties which pertain to it; and conversely, it is vacant in the eye of the law when it

is not occupied by a legally qualified incumbent who has a lawful right to continue therein until the happening of some future event."

"An office is vacant when it is empty,—when it is unoccupied,—when there is no one who, of right, may exercise its functions." *Attorney General, ex rel. O'Hara,* v. *Montgomery,* 275 Mich. 504, 512.

The incumbent holds over until his successor has been duly appointed and qualified in accordance with statutory direction. *Baxter* v. *Latimer,* 116 Mich. 356. And under a statute providing that one remains in office "until his successor shall be elected and qualified," the holdover period is a part of the term of office and the incumbent is a *de jure* officer. *First National Bank of Paw Paw* v. *Moon,* 243 Mich. 124. Such procedure prevents an hiatus in the government pending the time when a successor may be chosen and inducted into office. 22 R. C. L. p. 555, § 258. Mechem, Public Offices and Officers, § 397.

Nonetheless, the incumbent's official term has ended and thereafter he holds by sufferance until such time as he is supplanted by the new appointee. So it is said in *State, ex rel. Bickford,* v. *Cocke,* 54 Tex. 482, 485 (1881).

"The primary object of this provision, that the incumbent is entitled to hold the office until his successor is elected or qualified, is simply to prevent, on grounds of public necessity, a vacancy in fact in office until the newly elected or appointed officer can have a reasonable time within which to qualify.

"The right of the officer who thus holds over is by sufferance rather than from an intrinsic title to the office."

See, also, *Kline* v. *Mckelvey,* 57 W. Va. 29 (49 S. E. 896); *Alcorn, ex rel. Hendrick,* v. *Keating,* 120 Conn. 427 (181 Atl. 340) (1935) (based on the theory

however that the incumbent holding over is a "*de facto*" officer). See, also, the extensive note: "Purpose and effect of provision that incumbent shall hold his office until his successor is elected and qualified." 50 L. R. A. (N. S.) 365; *People, ex rel. Conrad,* v. *Stone,* 78 Mich. 635.

Hence, for the purpose of the appointment of a successor to an officer whose term has expired though an absolute vacancy does not exist within the enumerated meaning of 1 Comp. Laws 1929, § 3350 (Stat. Ann. § 6.693), the incumbent merely holds office pending the selection of his successor and his due qualification pursuant to statutory direction. It must therefore be concluded that Act No. 172, Pub. Acts 1851, does properly refer to vacancies in office as so construed.

"The statute does not purport to, nor could the legislature, deny the fact that a vacancy exists when an officer completes his constitutional term of office and no one is legally authorized to succeed him." *Toy, ex rel. Elliott,* v. *Voelker,* 273 Mich. 205, 209.

Does it follow then, as defendant contends, that both sections 3361 and 3364 of 1 Comp. Laws 1929 are superseded and repealed by implication by Act No. 199, Pub. Acts 1923 (1 Comp. Laws 1929, § 3365 [Stat. Ann. § 6.711]), in view of the determination that a vacancy does not exist? Courts are not prone to find statutory repeal by implication, and though it is true that "where a subsequent act is absolutely repugnant to and inconsistent with any other provisions of a prior act, the former act is repealed to the extent of such repugnance only," the repugnancy must be clear and unavoidable. *In re Lambrecht,* 137 Mich. 450, 455.

So it is stated in *Re Estate of Reynolds,* 274 Mich. 354, 359.

"It must be remembered that repeals by implication are not favored. In the case of *Michigan Telephone Co.* v. *City of Benton Harbor,* 121 Mich. 512, 517 (47 L. R. A. 104), the court said: 'Repeals by implication are not favored. To this proposition it is unnecessary to cite authorities. The intent to repeal must very clearly appear, and courts will not hold to a repeal if they can find reasonable ground to hold the contrary.' This court has held that only when two acts are so incompatible that both cannot stand, does a later act repeal a former. *Village of Highland Park* v. *McAlpine,* 117 Mich. 666; *In re Simmons,* 248 Mich. 297."

Nor does the case of *Attorney-General, ex rel. Whitcomb,* v. *Lau,* 256 Mich. 13, relied upon by defendant, hold to the contrary. There the court was confronted with two inconsistent statutes pertaining to the filling of vacancies in county offices, namely, Act No. 199, § 5, Pub. Acts 1923, being 1 Comp. Laws 1929, § 3369, subd. 2 (Stat. Ann. § 6.715), conferring appointive power upon the judge of probate, the county clerk, and the prosecuting attorney in the event of a vacancy and Rev. Stat. 1846, chap. 14, § 38, being 1 Comp. Laws 1929, § 1264 (Stat. Ann. § 5.684), providing that the board of supervisors may select a suitable person to perform the duties of treasurer in the event the office became vacant. The court properly viewed these statutes as in direct and irreconcilable conflict and when both statutes were invoked upon the death of a county treasurer prior to the expiration of his existing term and the commencement of his new term, the court concluded that Act No. 199 was meant to be a general act which would supplant earlier general acts covering the same subject matters and that it would simplify, unify, and expedite the filling of vacancies, and hence by necessary implication operated to repeal the former provisions pertaining to filling a

vacancy in the office of county treasurer. This result is nothing more than the application of the general rule as hereinbefore stated.

However, 1 Comp. Laws 1929, § 3365, being Act No. 199, § 1, Pub. Acts 1923, and sections 3361 and 3364 do not present the irreconcilable conflict present in the *Lau Case, supra.* Here, section 3365 empowers the governor to fill a vacancy in any elective or appointive State office, with certain exceptions, for the remainder of the unexpired term of such office. On the other hand, that portion of section 3361 first above quoted empowers the governor when during the recess of the legislature, the term of an officer expires, "to appoint some suitable person to such office, and such person shall hold such office, unless sooner removed by competent authority, until the close of the next session of the legislature, or until his successor is appointed, or elected and qualified." The one pertains to an appointment to an unexpired term of office; the other pertains to an appointment to office upon the expiration of the incumbent's term during the recess of the legislature. In the absence of any repealing clause and the absence of an irreconcilable conflict between the earlier and later statutes, the conclusion is inescapable that the provisions of sections 3361 and 3364 here invoked have not been nullified by section 3365.

Upon like principles it must be held that Act No. 13, Pub. Acts 1935, does not vitiate the terms of the statutes relied upon by plaintiff. True, the act is a special one which creates the office of corporation and securities commissioner and fixes the term, yet no provision is made therein for appointment to office except "by the governor for a term of four years subject to confirmation by the senate" with complete silence upon the question of appointment during the recess of the legislature. This omission

is supplied, and the very real contingency of a qualified vacancy arising by reason of expiration of the term of the appointee when the legislature is not in session is met by sections 3361 and 3364 quoted. The statutes in question are complementary to one another and should be read and construed together in accordance with the well-settled doctrine of statutes *in pari materia*. Since it must be presumed that the legislature had former statutes before it and to have been acquainted with their judicial construction at the time of the passage of new legislation, the presence of statutes of long standing which supply the very omission here in dispute is conclusive of the necessity of joint construction. 25 R. C. L. p. 1063, § 287; Crawford on Statutory Construction (1940), p. 429 *et seq*.

"The legal presumption is that the legislature did not intend to keep really contradictory enactments in the statute book, or to effect so important a measure as the repeal of a law without expressing an intention to do so. An interpretation leading to such a result should not be adopted unless it be inevitable. But the canon of construction in such cases is that if the courts can by any fair, strict, or liberal construction find for the two provisions a reasonable field of operation, without destroying their evident intent and meaning, preserving the force of both, and construing them together in harmony with the whole course of legislation upon the subject it is their duty to do so. *State, ex rel. Ellis,* v. *Givens,* 48 Fla. 165, 174 (37 South. 308)." Cited with approval in *Rathbun* v. *State of Michigan,* 284 Mich. 521, 544.

In referring the recess appointment of defendant by former Governor Dickinson to the committee on senate business, the president of the senate was guided by a similar occurrence in the session of 1911

at which time a communication from former Governor Fred M. Warner, submitting various nominations to office, was received by the senate under the order of business of "Messages from the Governor" and at that time the nominations to office had been referred to the committee on executive business. The incident is noted in Opinions of the Attorney General, 1911, p. 289, and gave rise to the case of *People, ex rel. Attorney General,* v. *Haggerty,* 167 Mich. 682.

It there appeared that Haggerty was appointed by the then Governor, Honorable Fred M. Warner, on December 20, 1910, to fill a vacancy created by the death of the incumbent to the board of control of the State prison for the unexpired term, the appointment being made during the recess of the legislature. Governor Warner's term of office expired December 31, 1910, and the term of office of his successor, Hon. Chase S. Osborn, commenced January 1, 1911. The legislature convened on January 4, 1911, and on January 10th "the following message from former Governor Fred M. Warner was received and read" submitting the name of Haggerty and 32 other recess appointees for confirmation. At the same time a message from Governor Osborn submitting other nominations for appointment to the same offices and terms was received and read. The senate confirmed Haggerty's appointment on January 12th and an action of *quo warranto* followed.

The court was confronted with the problem of interpreting that portion of 1 Comp. Laws 1897, § 2081 (3 Comp. Laws 1929, § 17545 [Stat. Ann. § 28.1372]), providing:

"Whenever a vacancy occurs in either of such boards, otherwise than by the expiration of a term, such vacancy shall be filled by the governor for the

remainder of the term, by and with the advice of the senate, if in session. If the senate is not in session, the appointment shall continue until the next regular session of the senate.''

In holding that the term of respondent expired *ipso facto* when the senate of 1911 convened, the court used this significant language:

''Counsel for respondent can see no purpose for a provision that the appointment should 'continue until the next regular session of the senate' unless it was intended to be submitted to the senate for confirmation. An obvious purpose would be to provide that it continue during the entire recess of the senate. Another more obvious purpose would be to comply with the earlier provision of the act requiring the governor to present these appointments to the senate for confirmation. The term of office of the governor of the State expires December 31st, before the regular sessions of the senate, which, by constitutional provision, occur on the first Wednesday of the January following. A governor who does not succeed himself, as far as the exercise of the duties and authority of that office are concerned, becomes a private citizen after his term expires. On January 10, 1911, when this appointment was submitted to the senate, by a message for confirmation, Governor Osborn had qualified and entered upon the exercise of the duties of that office. *The former governor who made this appointment was officially dead. No act of the legislature could extend the authority of a governor beyond the term of the office for which he had been elected as provided by the Constitution, nor can any presumption arise that such was the legislative intent.''* Pp. 685, 686. (Italics ours.)

By perfect analogy it follows that when the appointment of respondent herein was submitted to the senate for confirmation Governor Dickinson was

a private citizen, and the senate was unable of its own motion to extend the authority of the governor. Nor can it be said, as defendant finally argues, that the senate of its own initiative could make the appointment in question regardless of the expiration of the governor's term. This is the clear import of the *Haggerty Case, supra.* Such reasoning would make meaningless the express direction of Act No. 13, Pub. Acts 1935, calling for an appointment by the governor subject to confirmation by the senate. The power of appointment is in conjunction with the senate, *McCall* v. *Cull,* 51 Ariz. 237 (75 Pac. [2d] 696, 699), and may not be exercised by one branch of the government to the exclusion of the other. The same thought of concurrent action is expressed in the following excerpt from *State, ex rel. Nagle,* v. *Stafford,* 97 Mont. 275, 289 (34 Pac. [2d] 372, 379), where the phrase "subject to confirmation by the senate" was discussed:

" 'Subject to' means subservient or subordinate to * * * and embodies the command that the act shall not be effective until the condition is complied with. * * * With reference to the phrase 'with the advice and consent,' this court has uniformly held that it likewise requires confirmation by the consenting body, and that an appointment made under such a provision is ineffective until confirmed."

In concurring in a nomination to office made by the governor acting under a statute vesting the power of appointment in him "by and with the advice and consent of the senate," the senate exercises a legislative function, and may reconsider its vote and refuse to consent to the appointment, *Attorney General, ex rel. Dust,* v. *Oakman,* 126 Mich. 717 (86 Am. St. Rep. 574), as distinguished from the executive function which when once exerted may not be revoked. *Marbury* v. *Madison,* 1 Cranch (5 U. S.), 137 (2 L. Ed. 60).

This conclusion is contrary to the case of *Barrett v. Duff,* 114 Kan. 220 (217 Pac. 918), relied upon by counsel for defendant. Justice Hopkins, who expressed the majority opinion in that case, pointed out that under the Kansas Constitution and statutes the appointment in question is made by the governor before the senate acts and called attention to distinguishing Federal enactments for commissions to fill vacancies occurring during a recess of the senate, which expired at the end of the next session and contrasting State statutes. providing for appointments to fill vacancies for unexpired terms and until such time as successors are qualified. It is apparent that statutory provisions such as 1 Comp. Laws 1929, §§ 3361, 3364, of like import as the Federal enactments, were not present, and the court was compelled to construe the statute in question within its own four corners. But more important is the conclusion that there exists no constitutional or statutory provision requiring a nomination of appointees by the governor to the senate before appointment; and that the senate was not required to wait the advice of the governor before considering and approving recess appointments independently. This result is contra to the *Oakman Case, supra,* and its adoption, in the light of existing law, would be unjustified and tend to defeat orderly succession to public office.

This is evidenced by reference to the senate journals of which the court may take judicial notice. *Remus v. City of Grand Rapids,* 274 Mich. 577; *Wilson v. Atwood,* 270 Mich. 317. It there appears that Governor Van Wagoner submitted to the senate the appointment of L. A. Wikel of Ann Arbor to succeed Dan W. Hauser on the Michigan board of pharmacy. On May 14, 1941, the senate confirmed this appointment. Mr. Wikel filed the necessary

oath of office and immediately resigned. On May 19, 1941, the governor submitted the name of A. C. Jezewski to fill the vacancy, but the senate on May 20, 1941, referred back to the letter of former Governor Dickinson dated December 20, 1940, and confirmed an appointee therein named. The executive function to public office was thus sought to be exercised by the legislative branch of the government.

Upon the basis of the foregoing authorities and enactments, we conclude that the defendant, Howard M. Warner, holds office, unless sooner removed by competent authority, until the close of the next (*sic*, present) session of the legislature or until his successor is appointed or elected and qualified pursuant to 1 Comp. Laws 1929, §§ 3361, 3364; that Act No. 13, Pub. Acts 1935, does not sanction an appointment by the senate *sua sponte* for a period of four years without the joint action of a chief executive in his official capacity and the approval of the senate, and that the action of the senate on February 5, 1941, in attempting to confirm the appointment of defendant as corporation and securities commissioner for a term expiring September 20, 1943, by the former governor, is void, invalid and of no effect.

No costs allowed.

Since writing and serving the foregoing opinion, I have received copy of the dissenting opinion of Justice NORTH and note this statement in such opinion: "The office of the secretary of the senate is a continuous one and the secretary performs many duties as such in the interim between sessions." 1 Comp. Laws 1929, § 7 (Stat. Ann. § 2.33), in my opinion does not make this office a continuous one, but provides for the election of a secretary of the senate by each new body. I do not consider this of any particular importance in the determination of the issues involved in this case.

I further desire to call attention to Endlich on the Interpretation of Statutes, § 113 on p. 152, which is as follows:

"One of these presumptions is that the legislature does not intend to make any alteration in the law beyond what it explicitly declares, either in express terms or by unmistakable implication; or, in other words beyond the immediate scope and object of the statute. In all general matters beyond, the law remains undisturbed. It is in the last degree improbable that the legislature would overthrow fundamental principles, infringe rights, or depart from the general system of law, without expressing its intention with irresistible clearness; and to give any such effect to general words, simply because, in their widest and perhaps natural sense, they have that meaning, would be to give them a meaning in which they were not really used. It is, therefore, an established rule of construction that general words and phrases, however wide and comprehensive in their literal sense, must be construed as strictly limited to the immediate objects of the act, and as not altering the general principles of the law (*i.e.,* they are to be construed as near the use and reason of the prior law as may be, without violation of their obvious meaning)."

Applying the foregoing rule to Act No. 13, Pub. Acts 1935, providing for the appointment of a corporation and securities commissioner by the governor for the term of four years "subject to confirmation" means nothing more or less than this; that it shall be for the term of four years, only upon confirmation by the senate then in being, and not some future body, and in case of failure of confirmation, the general act controls.

Justice NORTH in his opinion contends that the opinion of the court in *State, ex rel. Kriebs,* v. *Halladay,* 52 S. D. 497 (219 N. W. 125), and the case of

*Attorney General, ex. rel. Eaves,* v. *State Bridge Commission,* 277 Mich. 373, are in accord in that they both hold that an interim appointee has title to the office until his appointment is adversely passed upon by the senate. I am unable to give to the language of the opinion in the *Bridge Commission Case* the interpretation given it by Justice NORTH.

A reading of the *Bridge Commission Case* clearly indicates that but slight attention was paid to the question directly at issue in the instant case. The only reference to the problem is found on pp. 385, 386, which is as follows:

"The question of the legal capacity of the members of the commission, although of slight consequence, can be answered by saying that although the act requires that these individuals be appointed by the governor with the advice and consent of the senate, the advising and consenting body has not been in session since their appointment. It is only reasonable to assume that the appointees have all the powers granted by the act until such time as the senate may pass adversely upon the appointments. We cannot presume the legislature intended the act to remain in suspension until their next session.

"In any event this question may not be raised in a collateral manner. *Carlton* v. *People,* 10 Mich. 250."

It is apparent that in the *Bridge Commission Case* an original appointment was under consideration as distinguished from the instant case, and furthermore, the point here involved was not thoroughly considered.

Justice NORTH draws a distinction between the instant case and *People, ex rel. Attorney General,* v. *Haggerty, supra,* upon the ground that in that case the "outgoing governor attempted to make an appointment after his term ended. In the present case

the outgoing governor made the appointment during his term and notified the senate seeking confirmation during his term." By referring to the *Haggerty Case,* it is seen that "respondent was appointed by the Honorable Fred M. Warner, Governor of Michigan, on December 20, 1910, and his commission was at once issued to him for the full unexpired term of his predecessor. * * * The term of office of the Honorable Chase S. Osborn, his successor as governor, began on January 1, 1911. The new State senate, as provided by the State Constitution, convened in regular session on January 4, 1911. On January 10th following, this appointment of respondent was submitted to the State senate by the former Governor Fred M. Warner for confirmation," and confirmed on January 12, 1911.

The appointment was therefore made during the term of office of Governor Warner, but apparently official notification was not given to the senate until after his term had come to an end. This fact would not seem to distinguish the cases, for the senate, carrying Justice NORTH's opinion to its logical conclusion, could take official notice of the appointment and affirm or reject it, notwithstanding failure of the governor to transmit official notice of the appointment to the senate. According to his reasoning, confirmation is made possible by any senate that may come into being during the tenure of office of the appointee. Such cannot be the meaning of the law for the intent is clear that appointment and confirmation is the joint act of a governor in office and a senate in being.

Justice NORTH cites and relies upon *State, ex rel. Kriebs,* v. *Halladay, supra,* 501, in which it is said:

"It is contended by relator that because the appointment of Halladay was never officially communicated to the senate, that body had no jurisdiction or authority to act upon it. We find nothing in the

Constitution or statutes of this State that prescribes the manner in which the senate shall obtain knowledge of the appointment of a person to an office requiring its confirmation, and in the absence of constitutional or statutory provisions on the subject, we see no reason why the senate may not take official notice of the fact of such an appointment. It was so held in *Barrett* v. *Duff,* 114 Kan. 220 (217 Pac. 918); *People, ex rel. Emerson,* v. *Shawver,* 30 Wyo. 366 (222 Pac. 11); *Commonwealth, ex rel. Woodruff,* v. *Stewart,* 286 Pa. 511 (134 Atl. 392)."

As I read the *Haggerty Case,* the court, by the clearest of implication, denied that the senate had any such power, at least when the term of the appointing governor has expired. To say that the receipt of the notice of the appointment by the outgoing governor and a different appointment by the incoming governor "puts the matter up to the senate" in effect gives the senate the executive power of appointment in direct contravention to constitutional provisions and the holding of this court in *Attorney General, ex rel. Dust,* v. *Oakman, supra. People, ex rel. Emerson,* v. *Shawver,* cited in the *Halladay Case,* in effect holds that the senate in the exercise of its power to consent to or confirm executive appointment to office performs an executive or administrative rather than a legislative function. This conclusion seems to me to be contrary to the holding of the Michigan courts, and the distinctions drawn by the dissenting opinion of Justice NORTH do not appear to me to be valid.

If the appointive power of the governor under our Constitution and statutes is to be held of *any consequence whatsoever,* the result reached by Justice NORTH in his dissenting opinion cannot obtain.

SHARPE, C. J. and BUSHNELL and STARR, JJ., concurred with CHANDLER, J.